# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| EDWARD PISTORIO and PAUL MURDOCK on behalf of themselves and all others similarly situated;<br><br>                   Plaintiffs,<br>     v.<br><br>FCA US LLC,<br><br>                Defendant. | Case No.:<br><br>Hon. |

## CLASS ACTION COMPLAINT AND JURY DEMAND

1.     Plaintiffs Edward Pistorio ("Pistorio") and Paul Murdock ("Murdock") (collectively "Plaintiffs") bring this action for themselves and on behalf of all persons in the United States who purchased or leased any 2017-2019 Chrysler Pacifica or Chrysler 300 vehicles equipped with FCA US LLC's "UConnect" infotainment system ("Class Vehicles") designed, manufactured, marketed, distributed, sold, warranted, and/or serviced by FCA US LLC. ("FCA" or "Defendant"). Plaintiffs allege as follows:

## INTRODUCTION

2.     This is a consumer class action concerning FCA's failure to disclose material facts regarding a safety defect in the Class Vehicles sold to consumers and FCA's failure to fulfill its warranty obligations with respect to that defect.

3.     There are specific standards that all automobile manufacturers must comply with. This case is based on FCA's breach of these standards. When FCA sells a vehicle, it has a duty to the customer that the vehicle operates properly and safely. When FCA discovers a defect, it must disclose the defect when it sells its vehicles and has an obligation to correct the defect or cease selling the vehicles. When FCA touts the benefits of a new technology in its vehicles, it must test the technology to ensure that it functions properly and as represented. When FCA provides warranties to customers, FCA is bound to stand by them. FCA failed to meet these standards when it sold or leased the putative Class Vehicles equipped

with the defective UConnect "infotainment" system.

4.    FCA manufactured, marketed, distributed, and sold the Class Vehicles without disclosing that the Class Vehicles' UConnect infotainment system ("Uconnect") was defective. Specifically, the Uconnect system is designed and/or manufactured with screens, including their operating software and routing modules, that suffer from freezing, loss of back up camera functionality, loss of navigation system functionality, black screens, repeated unintentional reboots, and general lack of operation ("Uconnect Defect"). The UConnect Defect results in the need for frequent software updates and expensive replacements of screens and related components. FCA knew about the deficiencies of the UConnect well before Plaintiffs purchased their Class Vehicles.

5.    FCA's predecessor, Chrysler Group, first introduced the UConnect in 2002 as an aftermarket Bluetooth system that could be factory-installed.

6.    In 2004, Chrysler Group first equipped its UConnect system in Chrysler vehicles.  Chrysler Group touted it as an innovative new technology to be introduced in the 2005 Chrysler 300.

7.    In 2008, Chrysler, LLC, another predecessor of FCA and successor entity to Chrysler Group, bundled what it called its "innovative consumer technologies under one umbrella – 'uconnect.'" The system included the phone connection, uconnect tunes, uconnect gps, uconnect studios and uconnect web.

8.     In 2011, FCA released UConnect Touch, including a touchscreen touted as being easier to use.[1]

9.     FCA released the fourth generation of the UConnect in the 2015 Chrysler 300, dubbed the "UConnect 8.4A" and premium "UConnect 8.4AN" systems, with 8.4-inch touchscreen interfaces.

10.     On information and belief, all forms of the UConnect 8.4 use the same operating software and routing modules.

11.     With the 2017 Chrysler Pacifica, FCA expanded the UConnect system to include what FCA called "UConnect Theater," which was a rear seat entertainment system using the UConnect technology providing two 10-inch touchscreens located on the back of the front seat headrests, in addition to the 8.4-inch UConnect 8.4 and 8.4N systems utilized by the driver.[2]

12.      Despite FCA (and its predecessors) consistently touting each iteration of the Uconnect as a technological marvel that provides ease, safety and piece-of-mind for purchasers, the systems have been plagued by problems from the

---

[1] Press Release, FCA US, *Customers Drive Development of Uconnect Touch* (June 21, 2011); https://media.fcanorthamerica.com/newsrelease.do?id=11011 (last visited June 26, 2020).  Exhibit 1.

[2] Press Release, FCA US, *All-new 2017 Chrysler Pacifica Offers Latest, Innovative Uconnect Systems and Services* (Jan. 11, 2016), https://media.fcanorthamerica.com/newsrelease.do?id=17220 (last visited June 26, 2020).  Exhibit 2.

beginning. In fact, prior to the fourth generation units in the Class Vehicles, FCA issued at least two (2) Technical Service Bulletins ("TSBs"), which are manufacturer communications to dealers to provide repair instructions for known defects, for the first generation of UConnect, seven (7) for the second generation, and fourteen (14) for the third generation. Though FCA and its predecessors touted each iteration of the Uconnect as an upgrade to the prior generation, the UConnect was actually getting worse, culminating in its worst iteration of all, the fourth generation, which is in the Class Vehicles.

13.    The fourth generation Uconnect has been subject to at least seventeen (17) TSBs, manufacturer communications, or recalls since its release, all of which are described in detail below. Several of these communications specifically contemplate safety-related failures like loss of backup camera, which in 2018 the National Highway Traffic Safety Administration ("NHTSA") mandated in all passenger vehicles.

14.    The UConnect Defect is inherent in each Class Vehicle and was present at the time of sale in each vehicle.

15.    FCA undertook affirmative measures to conceal the UConnect Defect and other malfunctions through, among other things, TSBs, manufacturer communications, recalls and/or software updates, that FCA issues to its authorized repair facilities and dealers.  These communications confirmed FCA's knowledge of

the UConnect Defect, but FCA disregarded its importance.

16.     FCA was aware of the UConnect Defect from the first three generations of the technology, pre-production testing, design failure mode analysis, calls to its customer service hotline, and customer complaints made to dealers.  However, this knowledge and information was exclusively within the possession of FCA and its network of dealers and, therefore, unavailable to consumers.

17.     The Uconnect Defect is material to consumers because it poses a serious safety concern. As attested by Class Members in scores of complaints to the National Highway Traffic Safety Administration ("NHTSA"), and other online forums, the UConnect Defect can result in a loss of backup camera, loss of navigation, black screens, and inadvertent reboots among other failure modes.  The failure of the backup camera and navigation system puts lives at risk.  A faulty backup camera leaves drivers unable to see small children or wheelchair-using adults behind their vehicles.  A malfunctioning navigation system requires drivers to rely on their phones for navigation, which increases distraction and the risk of an accident and may violate handsfree laws.

18.     The UConnect Defect is also material because consumers incur significant and unexpected repair costs. FCA's failure to disclose, at the time of purchase, the UConnect's marked tendency to fail is material because no reasonable consumer expects to spend hundreds, if not thousands, of dollars to repair or replace

the Uconnect Defects in their vehicles.

19.     Had FCA disclosed the UConnect Defect, Plaintiffs and Class Members would not have purchased the Class Vehicles or would have paid less for them.

## THE PARTIES

### **Plaintiff Edward Pistorio**

20.     Plaintiff Edward Pistorio is a citizen of Florida who resides in Cape Coral, Florida.

21.     On or around August 25, 2017, Plaintiff Pistorio purchased a new 2017 Chrysler 300S, equipped with a UConnect, from Lakeland Chrysler Dodge Jeep, an authorized FCA dealership in Lakeland, Florida.

22.     Plaintiff Pistorio purchased his vehicle primarily for personal, family, or household use.

23.     Passenger safety and vehicle reliability were important factors in Plaintiff Pistorio's decision to purchase his vehicle. Specifically, Plaintiff Pistorio's recent adoption of his child informed his decision to purchase a safe vehicle. Before making his purchase, Plaintiff Pistorio conducted online research on the Chrysler 300S, including on Edmunds, Kelley Blue Book, and "Google" searches, visited several dealership websites, frequented Defendant's website to research information about the vehicle, which strongly featured and promoted the UConnect services, including the safety features such as the backup camera and hands free phone use,

and test drove this vehicle with a dealership salesperson. None of these sources disclosed any information about the UConnect Defect. Plaintiff Pistorio believed that the Chrysler 300S would be a safe and reliable vehicle. Plaintiff Pistorio also reviewed the vehicle's Monroney Sticker, or "window sticker", which listed official information about the vehicle, but which also made no reference to the UConnect Defect. Had any of these sources disclosed information about the UConnect Defect, Plaintiff Pistorio would have seen that information.

24.     FCA's omissions were material to Plaintiff Pistorio. Had FCA disclosed its knowledge of the UConnect Defect before Plaintiff Pistorio purchased his vehicle, Plaintiff Pistorio would have seen and been aware of the disclosures. Furthermore, had he known of the UConnect Defect, Plaintiff Pistorio would not have purchased his vehicle, or would have paid less for it.

25.     Within two months of purchasing his vehicle, Plaintiff Pistorio observed his UConnect malfunctioning. In particular, Plaintiff Pistorio noticed that the screen on his Uconnect device that displays the backup camera would freeze while the vehicle was in reverse, preventing Plaintiff Pistorio from observing whether any person or thing was in the path of his vehicle. The screen would continue to display the frozen image from that backup camera, even after Plaintiff Pistorio had started driving forward.

26.     Plaintiff Pistorio's UConnect screen would also turn completely black

and then reboot while Plaintiff Pistorio was operating the vehicle.  Often that cycle would repeat more than once during a single trip.

27.    Plaintiff Pistorio's UConnect also lacked reliable Bluetooth connectivity.

28.    Because the UConnect in his vehicle was malfunctioning, Plaintiff Pistorio sought repairs, under his vehicle's warranty, from Galeana Chrysler Dodge Jeep Ram Fiat ("Galeana Chrysler"), an authorized FCA dealership, on November 6th, 2017, at 3,277 miles. However, Plaintiff Pistorio was informed by a representative of Galeana Chrysler that they could not replicate his complaints.

29.    Plaintiff Pistorio's UConnect system continued to malfunction without remedy, so he returned to Galeana Chrysler in September 2018, at 14,929 miles.

30.    In response to Plaintiff Pistorio's complaint, a technician at Galeana purportedly performed a software update on Plaintiffs' UConnect on September 6th, 2018.  However, this did not repair the UConnect Defect.

31.    Plaintiff Pistorio's UConnect system continued to malfunction in the same manner it had prior to the software update. Because Galeana Chrysler refused to repair Plaintiff Pistorio's UConnect unless they observed the malfunction, he sought repairs from Cape Coral Chrysler Dodge Jeep Ram ("Cape Coral Chrysler"), an authorized FCA dealership, on August 5th, 2019, at 26,372 miles.

32.    However, Plaintiff Pistorio was informed by a representative of Cape

Coral Chrysler that there was nothing they could do unless they observed the malfunction. Cape Coral Chrysler, just as Galeana Chrysler, refused to address the UConnect Defect in Plaintiff Pistorio's vehicle.

33.     On August 10th, 2019, at 26,958 miles, Plaintiff Pistorio returned to Cape Coral Chrysler to convince the dealership that the UConnect system in his vehicle required repair by showing a service technician the video Plaintiff Pistorio had taken of his UConnect system malfunctioning.

34.     After viewing the video, the Cape Coral Chrysler service technician refused to repair Plaintiff Pistorio's UConnect system.  The service technician informed Plaintiff Pistorio that the dealership would not repair his UConnect system, unless a representative of the dealership witnessed the malfunction happen while in the vehicle.

35.     Plaintiff Pistorio's vehicle continues to exhibit the UConnect Defect and has never been repaired by Defendant.

36.     At all times, Plaintiff Pistorio, like all Class Members, has driven his vehicle in a manner both foreseeable and in which it was intended to be used.

**Plaintiff Paul Murdock**

37.     Plaintiff Paul Murdock is a citizen of Pennsylvania who resides in Langhorne, Pennsylvania.

38.     On or around December 2016, Plaintiff Murdock purchased a new

2017 Chrysler Pacifica equipped with UConnect from Reedman Toll Auto World ("Reedman Toll"), an authorized FCA dealer in Langhorne, Pennsylvania.

39.    Plaintiff Murdock purchased his vehicle primarily for personal, family, or household use.

40.    Passenger safety and vehicle reliability were important factors in Plaintiff Murdock's decision to purchase his vehicle. Before making his purchase, Plaintiff did an online search for the vehicle, including on "Google", visited several dealership websites to research information about the vehicle, and test drove this vehicle with a dealership salesperson.   None of these sources disclosed any information about the UConnect Defect. Plaintiff Murdock believed that the Pacifica would be a safe and reliable vehicle. Plaintiff Murdock also reviewed the vehicle's Monroney Sticker, or "window sticker", which listed official information about the vehicle, but which also made no reference to the UConnect Defect.   Had any of these sources disclosed information about the UConnect Defect, Plaintiff Murdock would have seen that information.

41.    FCA's omissions were material to Plaintiff Murdock. Had FCA disclosed its knowledge of the UConnect Defect before Plaintiff Murdock purchased his vehicle, Plaintiff Murdock would have seen and been aware of the disclosures. Furthermore, had he known of the UConnect Defect, Plaintiff Murdock would not have purchased his vehicle, or would have paid less for it.

42.     Within a few months of purchasing his vehicle, Plaintiff Murdock observed his UConnect malfunctioning.  In particular, the screen in UConnect device that displays, among other things, the backup camera would, without input from any passenger in the vehicle, turn black and reboot.  This malfunction occurred frequently, at least weekly and often more than once during a single trip.

43.     Plaintiff Murdock's UConnect system also had chronic issues with the GPS, Bluetooth and audio system functionality.

44.     Because the UConnect in his vehicle was malfunctioning, Plaintiff Murdock took the vehicle to Reedman Toll on March 18, 2017, at 3,773 miles, to obtain repair under FCA's warranty.  However, a representative of Reedman Toll told Plaintiff Murdock they could not replicate Plaintiff Murdock's complaints.

45.     Plaintiff Murdock sought repairs for his UConnect on multiple occasions while taking his Chrysler Pacifica in for regular maintenance checks, including visits on October 23, 2017 (at 15,918 miles), January 3, 2018, May 11, 2018 (at 25,124 miles), September 27, 2018 (at 30,200 miles), and December 28, 2018 (at 33,695 miles). Because Reedman Toll refused to repair Plaintiff Murdock's UConnect unless they observed the malfunction, despite repeated complaints to the dealership, Plaintiff's UConnect system continued to malfunction.

46.     On or around August 2019, Plaintiff Murdock's UConnect system received an over-the-air remote software update without warning, during which

11

Plaintiff Murdock parked his vehicle for about 30 minutes to allow for the update. However, the remote software update did not cure Plaintiff Murdock's UConnect defect. In fact, the performance of the GPS in the UConnect significantly deteriorated after the update.

47.   Plaintiff Murdock again sought repairs from Reedman Toll on January 20, 2020.  This time, Reedman Toll kept Plaintiff Murdock's vehicle for over a week while trying to remedy the defects in the UConnect system.  Ultimately, Reedman Toll restored functionality of the GPS, but was not able to provide a complete repair of Plaintiff Murdock's UConnect system.  Several aspects of Plaintiff Murdock's UConnect system continue to malfunction, including the backup camera.

48.   Accordingly, Plaintiff Murdock's vehicle continues to exhibit the UConnect Defect and has never been repaired by Defendant.

49.   At all times, Plaintiff Murdock, like all Class Members, has driven his vehicle in a manner both foreseeable and in which it was intended to be used.

**Defendant FCA US LLC**

50.   Defendant FCA is a limited liability company organized and in existence under the laws of the State of Delaware. FCA's principal place of business is in Michigan. Its Corporate Headquarters are located at 1000 Chrysler Drive, Auburn Hills, Michigan 48326.  FCA designs, manufactures, markets, distributes,

services, repairs, sells, and leases passenger vehicles, including the Class Vehicles, nationwide. Defendant FCA is the warrantor and distributor of the Class Vehicles in the United States.

51.     At all relevant times, Defendant FCA was and is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and/or selling automobiles and motor vehicle components throughout the United States of America.

## JURISDICTION

52.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more Class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity between Plaintiffs and Defendant. This Court has supplemental jurisdiction over the alleged state law claims pursuant to 28 U.S.C. § 1367.

53.     This Court has personal jurisdiction over Defendant because Defendant has its United States headquarters in this District. Defendant also conducts business in Michigan, has purposefully availed itself of the benefits and protections of Michigan by continuously and systematically conducting substantial business in this judicial district, directing advertising and marketing materials to districts within Michigan, and intentionally and purposefully placing Class

Vehicles into the stream of commerce within the districts of Michigan and throughout the United States, with the expectation and intent that consumers would purchase them. Thousands of Class Vehicles have been sold in Michigan and are operated within the State and this judicial district.

## VENUE

54.     Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391 because FCA is headquartered in the Eastern District of Michigan and regularly transacts business in this district, is subject to personal jurisdiction in this district and, therefore, is deemed to be a citizen of this district. Additionally, FCA advertises in this district, has received substantial revenue and profits from its sales and/or leasing of Class Vehicles in this district, and a substantial part of the events and/or omissions giving rise to the claims herein occurred within this district.

## FACTUAL ALLEGATIONS

55.     FCA's predecessor, Chrysler Group, first introduced the UConnect in 2002 as an aftermarket Bluetooth system that could be factory-installed. "'We wanted a name that is easy to remember and truly represents our system'" said Wolfgang Bernhard, Chrysler Group Chief Operating Office. "With U-Connect, the central focus is "U", the user. Our system provides exactly what Chrysler Group customers are looking for – affordable and flexible services that match their specific

lifestyles."[3]

56.     Thereafter, Chrysler Group first equipped its UConnect system in Chrysler vehicles in 2004. Chrysler Group touted the Uconnect system as an innovative new technology, to be introduced in the 2005 Chrysler 300, that was "integrated into the vehicle's electrical architecture." The company explained that the Uconnect system promotes "a flexible, 'take-it-anywhere' sense of freedom, so customers are not tied to their vehicles." "'Uconnect is about safety, freedom, flexibility and affordability,' said Jack Withrow, Director – Vehicle Entertainment and Communications, Chrysler Group." UConnect was specifically marketed by Chrysler Group as "adap[tive] to the users' specific needs and lifestyles."[4]

57.     In 2008, Chrysler, LLC, another predecessor of FCA and successor entity to Chrysler Group, bundled "innovative consumer technologies under one umbrella – 'uconnect.' The function of the feature is directly in the name – uconnect phone, uconnect tunes, uconnect gps, uconnect studios and uconnect web." "'We set out to connect customers to the things that matter most to them' said Deborah Meyer,

---

[3] Press Release, FCA US, *Chrysler Group Announces Name of In-Vehicle Communications System* (Jan. 9, 2002), https://media.fcanorthamerica.com/newsrelease.do?id=806 (last visited June 26, 2020). Exhibit 3.

[4] Press Release, FCA US, *Innovative Technologies Available on the 2005 Chrysler 300* (Mar. 1, 2004), https://media.fcanorthamerica.com/newsrelease.do?id=80 (last visited June 26, 2020). Exhibit 4.

Vice President and Chief Marketing Officer – Chrysler LLC. 'The role for "uconnect" in the 2009 model year places the focus on the customer experience and how the features will make their life easier.'"[5]

58.     As technology advanced, so too did UConnect. In 2011, FCA released the next evolution of UConnect, called UConnect Touch. "Customer input – from technophobes as well 'power techies' – is crucial to the ongoing development of Uconnect systems in Ram Truck, Dodge, Chrysler and Jeep Vehicles. Prior to designing the Uconnect Touch system…engineers collected feedback from customers saying they wanted systems that are easy to use, capable and don't distract from their primary task of driving."[6]

59.     According to Mark Zenios, Head of UConnect Systems and Services, Chrysler Group, LLC, "'Chrysler Group has listened to its customers to understand the types of technologies people want in their vehicles … Uconnect offers communication and entertainment systems that are easy to learn, easy to use and enable the driver and passenger to stay connected and entertained in a safe and

---

[5] Press Release, FCA US, *Chrysler LLC Launces Umbrella 'uconnect' Name for Connectivity Technologies* (June 26, 2008), https://media.fcanorthamerica.com/newsrelease.do?id=7955 (last visited June 26, 2020). Exhibit 5.

[6] Press Release, FCA US, *Customers Drive Development of Uconnect Touch* (June 21, 2011), https://media.fcanorthamerica.com/newsrelease.do?id=11011 (last visited June 26, 2020). Exhibit 1.

responsible manner while on the road.'"[7] He also said that "'Chrysler Group has established three pillars as the foundation of Uconnect: speed, accuracy and ease-of-use…. The goal is to provide drivers with a variety of ways to quickly connect with and easily control the information they want and need, while keeping them focused on the primary task of driving.'"[8]

60.    FCA released the fourth generation of the UConnect in the 2015 Chrysler 300, dubbed the "UConnect 8.4A" and premium "UConnect 8.4AN" systems with 8.4-inch touchscreen interfaces. "The new 2015 Chrysler 300 is loaded with an array of state-of-the-art, innovative and easy-to-use features and services designed to keep consumers connected, engaged and informed, while keeping their hands on the wheel and eyes on the road." Alan Amici, Head of UConnect Systems and Services said that FCA's goal was to "provide drivers with a variety of ways to quickly connect with, and easily control, the information they want and need, while keeping them focused on the primary task of driving."[9]

---

[7] Press Release, FCA US, *Chrysler Group LLC Debuts New Uconnect Mobile Exhibit at 2012 International Consumer electronics Show* (Jan. 6, 2012), https://media.fcanorthamerica.com/newsrelease.do?id=11868 (last visited June 26, 2020). Exhibit 6.

[8] Press Release, FCA US, *New Uconnect Access Has Power to Please, With Ease* (Sept. 1, 2012), https://media.fcanorthamerica.com/newsrelease.do?id=12964 (last visited June 26, 2020). Exhibit 7.

[9] Press Release, FCA US, *New 2015 Chrysler 300 Offers Latest, Innovative Uconnect Systems and Services* (Nov. 19, 2014),

61.     With the 2017 Chrysler Pacifica, FCA expanded the UConnect system to include what FCA called "UConnect Theater," which was a rear seat entertainment system using the UConnect technology providing two 10-inch touchscreens located on the back of the front seat headrests, in addition to the 8.4-inch UConnect 8.4 and 8.4N systems utilized by the driver.[10]

62.     FCA is currently working on their next iteration of the UConnect, called "Uconnect 5" because as FCA's UConnect website states, the "UConnect system is always evolving to help meet your safety, security, information and lifestyle needs."[11] However, on information and belief, the Class Vehicles are all equipped with the fourth-generation systems.[12]

63.     Though marketed as a technological marvel, that provides ease, safety and piece-of-mind for purchasers, the Uconnect system was anything but. In fact, prior to the fourth generation units, and exclusively based on publicly available

---

https://media.fcanorthamerica.com/newsrelease.do?id=16180 (last visited June 26, 2020). Exhibit 8.

[10] Press Release, FCA US, *All-new 2017 Chrysler Pacifica Offers Latest, Innovative Uconnect Systems and Services* (Jan. 11, 2016), https://media.fcanorthamerica.com/newsrelease.do?id=17220 (last visited June 26, 2020). Exhibit 2.

[11] Chrysler Uconnect, https://www.chrysler.com/uconnect.html#systems (last visited June 26, 2020). Exhibit 9.

[12] Press Release, FCA US, *FCA's All-new Uconnect 5 Global Platform Is the Most Advanced Uconnect System Ever: Powerful, Personalized, Connected and Easy to Use* (Jan. 20, 2020), https://media.fcanorthamerica.com/newsrelease.do?id=21506 (last visited June 26, 2020). Exhibit 10.

information, Defendant issued two (2) Technical Service Bulletins ("TSBs"), manufacturer communications or recalls for the first generation of UConnect since its release,[13] seven (7) for the second generation since its release,[14] and fourteen (14) for the third generation since its release.[15] Though touted as upgrades to prior

_____

[13] NHTSA ID Number 10139704; Manufacture Communication Number 08-069-14 dated August 21, 2014 ("UConnect Hands Free Module Fails To Respond Due To Module Lock Up") which superseded Service Bulletin 08-014-06 dated March 16, 2006.

[14] NHTSA ID Number 10121846, Manufacturer Communication Number 9003220 dated November 30, 2016 (involving gloss of Bluetooth, Hand-Free Calling, and/or Voice Commands); NHTSA ID Number 10140254, Manufacturer Communication Number Z5091195A$ dated May 4, 2016 (*same*); NHTSA ID Number 10058299; Manufacturer Communication Number SB-08-055-15REVA dated August 13, 2015, superseding Service Bulletin 08-055-15 dated May 16, 2015 (involving various failures including loss of radio reception, muted audio, loss of screen, loss of review camera, frozen screens, incorrect maps graphics, etc.); NHTSA ID Number 10062148; Manufacturer Communication Number 08-028-14REV.A dated September 12, 2014, superseding Service Bulletin 08-028-14 Dated March 07, 2014 and replacing Service Bulletin 08-050-13 dated July 11, 2013 (involving various failures including screen going blank, rear view camera going blank, frozen interface, incorrect map icons, navigation icons going backwards, etc.)

[15] NHTSA ID Number 10166584, Manufacturer Communication Number 08-080-19 dated August 16, 2019, superseding Service Bulletin 08-080-18, dated June 12, 2018 (Hands-free module failures and enhancements); NHTSA ID Number 10121797, Manufacturer Communication Number 08-055-17 REV.A dated September 15, 2017, superseding Service Bulletin 08-055-17 (*same*); NHTSA ID Number 10121670, Manufacturer Communication Number 68234120A$ dated July 13, 2016, superseding number 68234120A dated April 20, 2016 (Hands free inoperative, radio inoperative, loss of screen, touchscreen display malfunctioning); NHTSA ID Number 10159965, Manufacturer Communication Number 08-114-15 REV A dated November 17, 2015, superseding Service Bulletin 08-114-15 dated November 17, 2015 (display going blank, skipped

generations, it seems that the UConnect was actually getting worse, culminating in its worst iteration of all, the one in the Class Vehicles.

64.    The fourth generation has been subject to at least seventeen (17)[16] TSBs, manufacturer communications, or recalls since its release, all of which are described in detail below. Several of these specifically contemplate safety-related failures like loss of backup camera, which was mandated by the National Highway Traffic Safety Administration ("NHTSA") in 2018. In NHTSA's own words: "A rearview video system (RVS), also known as a backup camera, is a *safety* technology that helps prevent back-over crashes and protect our most vulnerable people – children and senior citizens. By providing an image of the area behind the vehicle, backup cameras help drivers see behind the vehicle." NHTSA went so far as to refer to backup cameras as "lifesaving technology."[17]

---

channels, back up display may not turn off); NHTSA ID Number 10074618, Manufacturer Communication Number 08-033-15REV.B dated November 13, 2015, superseding Service Bulletin 08-033-15 REV.A dated August 11, 2015 (Display goes blank, radio intermittent reset, navigation intermittent reset); NHTSA ID Number 10144865, Manufacturer Communication Number 08-032-15 dated March 31, 2015, superseding Service Bulletin 08-066-14 dated August 8, 2014 (*same*); NHTSA ID Number 10139696, Manufacturer Communication Number 08-030-14 REV.A dated August 15, 2014, superseding Service Bulletin 08-030-14 dated March 11, 2014 (Radio and Navigation display lock up and go blank, etc.)

[16] *See* ¶ 96 below.

[17] NHTSA, *Driver Assistance Technologies*, https://www.nhtsa.gov/equipment/safety-technologies#backing-parking-30656 (last visited June 26, 2020). Exhibit 11.

65. The illustrations below depict the UConnect 8.4 in the Class Vehicles UConnect Theater, which have been nothing but problematic:







66.     Specifically, on information and belief, the Uconnect system is designed and or manufactured with screens, including their operating software, that suffer from freezing, loss of back up camera functionality, loss of navigation, black screens, repeated unintentional reboots, and general lack of operation. The UConnect Defect results in the need for frequent software updates and expensive replacements of screens and related components.

### The UConnect Defect Poses a Serious Safety Concern

67.     The UConnect Defect is material to consumers because it presents a serious safety concern. Class Members have repeatedly reported disturbing failures to the National Highway Traffic Safety Administration ("NHTSA"). This frequently involves screens going black, loss of backup cameras, and loss of navigation. The following are complaints reflecting the safety risk posed:

Date of Complaint:     January 16, 2018
Date of Incident:      January 9, 2018
NHTSA ID No.:          11062977
VIN:                   2C4RC1EG9JR****
Vehicle Type:          2017 Chrysler Pacifica

WHEN BACKING UP IN A NEW POORLY LIGHTED PARKING DECK, THE SAFETY BRAKING SYSTEM AND BACK UP CAMERA WITH ASSOCIATED WARNING BEEPS DID NOT ENGAGE. THE RESULTING CRASH DAMAGED THE BUMPER, REAR LIFTGATE, REAR WINDOW, AND ME.*BF *TR

Date of Complaint:     September 16, 2019
Date of Incident:      July 17, 2019
NHTSA ID No.:          11255890
VIN:                   2C4RC1GG6JR****
Vehicle Type:          2018 Chrysler Pacifica

… 3 TIMES ALREADY WHEN I PUT MY CAR IN REVERSE MY

BACKUP CAMERA COMES ON BUT DONT GO OFF WHEN I PUT IT IN DRIVE. SO WHILE IM DRIVING DOWN THE ROAD MY BACKUP CAMERA IS ON AND IS VERY DISTRACTING AND DANGEROUS...

Date of Complaint:     November 20, 2017
Date of Incident:      November 4, 2017
NHTSA ID No.:          11047511
VIN:                   2C4RC1EG3HR****
Vehicle Type:          2017 Chrysler Pacifica

INFOTAINMENT SCREEN FREEZES AND/OR JUMPS AROUND AND WILL NOT LET THE USER CHANGE TEMPERATURE CONTROLS, ADJUST RADIO FUNCTIONS, ALLOW HANDS-FREE CALLS, OR ACCEPT ANY INPUTS AT ALL. THIS CREATES A DISTRACTING AND EXTREMELY FRUSTRATING EXPERIENCE WITH ABSOLUTELY NO WAY TO CONTROL THE                                                    SYSTEM.

THIS ISSUE HAS BEEN PRESENT SINCE PURCHASING THE VEHICLE IN MARCH2017. EVEN AFTER NOTIFYING FCA ABOUT THE ISSUE THROUGH THE DEALER, UCONNECT WEB CUSTOMER SERVICE PORTAL, AND CHRYSLER CARES CONTACTS IT IS STILL UNRESOLVED. A SOFTWARE UPDATE RELEASES IN LATE SEPT 2017 FAILED TO CORRECT THE ISSUE.

Date of Complaint:     May 24, 2018
Date of Incident:      December 10, 2017
NHTSA ID No.:          11097723
VIN:                   2C4RC1N77JR****
Vehicle Type:          2018 Chrysler Pacifica

VEHICLE UCONNECT SCREEN LOCKS ONTO FORWARD IMAGE WHILE MOVING FORWARD DOWN THE ROAD OR GOES BLACK ELIMINATING THE ABILITY TO ACCESS ANY OF THE CLIMATE CONTROL OR SOS FEATURES. EXTREMELY DISTRACTING AND REQUIRES VEHICLE TO BE PULLED OVER AND RESTARTED TO CLEAR.

Date of Complaint:     April 16, 2019
Date of Incident:      October 27, 2018
NHTSA ID No.:          11196663
VIN:                   2C4RC1EG2JR****
Vehicle Type:          2018 Chrysler Pacifica

THE DRIVERS SCREEN (NAVIGATION , BACK UP CAMERA, DVD,ETC) FREEZES REGULARLY. THIS MEANS THAT OFTEN THE BACKUP CAMERA IS UNAVAILABLE, AT TIMES THE MOVIE SHOWS EVEN WHILE DRIVING. I HAVE REPORTED IT SEVERAL TIMES TO CHRYSLER'S UCONNECT TEAM WITH

NO RESOLUTION. MY CASE MANAGER IS NO LONGER ANSWERING MY CALLS. I HAVE VIDEOS OF THE MALFUNCTION. THE DEALERSHIP HAS ASKED ME TO BRING THE CAR IN 5 TIMES ALREADY, WITH NO RESOLUTION, BUT THEIR "PLAN" IS TO JUST HAVE ME KEEP BRINGING IT IN BUT SAID THEY CANNOT REPLACE THE SCREEN /DEVICE. IT IS A SAFETY ISSUE THAT I CANNOT RELIABLY ACCESS MY REAR CAMERA OR CHANGE APPLICATIONS. I HAVE VIDEOS OF MULTIPLE IMSTAMCES

Date of Complaint:      August 2, 2019
Date of Incident:       June 20, 2019
NHTSA ID No.:           11241242
VIN:                    2C4RC1L79JR****
Vehicle Type:           2018 Chrysler Pacifica

WHILE DRIVING ON A HIGHWAY DURING POURING RAIN, WITH WIPERS ON HIGH AND HEAD LIGHTS ON, DASH AND TOUCH SCREEN WENT OFF/BLACK FOR UP TO 15 MINUTES THEN TURNED BACK ON AGAIN. THIS OCCURRED THREE TIMES WHILE DRIVING. I WAS UNABLE TO PULL OVER ON THE THRUWAY AND WAS UNABLE TO ASSESS IF MY HEAD LIGHTS WERE AFFECTED AS WELL. WE HAD BEEN DRIVING ABOUT AN HOUR WHEN THIS OCCURRED. THE CAR HAD BEEN CHARGED FULLY BEFORE BEGINNING OUR TRAVELS THAT DAY.

Date of Complaint:      September 5, 2019
Date of Incident:       September 5, 2019
NHTSA ID No.:           11253449
VIN:                    2C4RC1GG0HR****
Vehicle Type:           2017 Chrysler Pacifica

BACK UP CAMERA HAS START TO MALFUNCTION. MORE TIMES THAN NOT WHEN YOU GO INTO REVERSE THE CAMERA EITHER COMES UP BLACK, BLACK WITH WARNING LINES, BLUE SCREEN, FUZZY PICTURES, GREAT PICTURES THEN YOU MOVE AND IT FREEZES. THIS IS BECOMING RIDICULOUS WITH A PRETTY MUCH BRAND NEW VEHICLE. NEEDS TO BE ADDRESSED AND FIXED PROPERLY.

Date of Complaint:      July 22, 2019
Date of Incident:       July 1, 2019
NHTSA ID No.:           11233935
VIN:                    2C4RC1EG5JR****
Vehicle Type:           2018 Chrysler Pacifica

THE ELECTRONICS THROUGH UCONNECT SHUT OFF RANDOMLY OR WILL NOT ALL WORK RANDOMLY. WE HAVE HAD THE SOFTWARE UPDATED BY OURSELVES AND THE DEALERSHIP ON MULTIPLE OCCASIONS. WHILE

DRIVING OR IN PARK.

Date of Complaint:      June 18, 2019
Date of Incident:       May 31, 2019
NHTSA ID No.:           11182730
VIN:                    2C4RC1BG3HR****
Vehicle Type:           2017 Chrysler Pacifica

RADIO SCREEN WENT BLACK. NOTHING CONNECTED WITH SCREEN CAN BE USED (RADIO, BACKUP CAMERA, CLIMATE CONTROL, ETC.

Date of Complaint:      February 27, 2019
Date of Incident:       February 19, 2019
NHTSA ID No.:           11221047
VIN:                    2C4RC1EG3HR****
Vehicle Type:           2017 Chrysler Pacifica

THE UCONNECT SYSTEM HAS GONE OUT IN MY CAR ( SCREEN GOES BLACK) OVER A DOZEN TIMES IN 2 YEARS. WE ARE UNABLE TO USE FEATURES SUCH AS BACKUP CAM, TEMP CONTOLS, NAVIGATION, RADIO ETC. IT HAS BEEN TO THE DEALER 6 TIMES AND NO PERMANENT FIX HAS BEEN FOUND. LAST WEEK I RE-SET THE FUSE IN ORDER TO GET IT TO WORK

Date of Complaint:      August 15, 2018
Date of Incident:       April 1, 2018
NHTSA ID No.:           11120139
VIN:                    N/A
Vehicle Type:           2017 Chrysler 300

BACK UP CAMERA NOT WORKING, HAS BEEN TO THE SHOP TWICE FOR REPAIR. 1ST TIME WAS SOFTWARE UPDATE, DIDN'T RESOLVE AS STILL WORKING RANDOMLY, 2ND TIME U05 RECALL , AGAIN DID'T WORK, WILL BE TAKING TO DEALERSHIP AGAIN FOR RESOLUTION. STARTED DAY AFTER PURCHASE, AND HAS BEEN GOING ON NOW 4 MONTHS

68.     In addition to sudden failures, the UConnect Defect presents a further

safety concern because it causes the driver to lose concentration on the road to

address the loss of navigation, blacked screens, and loss of radio functionality,

among other failures, while driving.

**FCA Had Superior and Exclusive Knowledge of the UConnect Defect**

69.     Since 2017, FCA has designed, manufactured, distributed, sold, and leased the Class Vehicles. However, the fourth generation of UConnect was first equipped in vehicles in 2015. In fact, FCA issued the first communication to dealers regarding the UConnect Defect in August of 2016, well in advance of the Class Vehicles being offered for sale on the market.

70.     Based on publicly available information, these are the relevant TSBs, manufacturer communications and/or recalls issued by FCA in chronological order:

(a)     August 31, 2016, GPOP – Issue Review System for Part Number 682271688A$ for: Rear Seat Entertainment System Video Routing Module, requiring a check of the software in the radio head unit prior to replacing the Video Routing Module.

(b)     June 28, 2017, GPOP – Issue Review System 9003749 for: requesting that prior to replacing a UConnect for lock up, blank screen, or no sound, to perform a vehicle battery test.

(c)     February 1, 2017, Service Bulletin 08-007-17 REV.A for: among other things: radio resetting, radio controls and touchscreen freezing up or becomes inoperative, rear view camera does not display on screen, inaccurate location of vehicle on the navigation screen, map screen does not return

after rear view camera clears, navigation GPS not available, no sound or navigation when the radio is in customer mode, when making an SOS call the display shoes the vehicle phone has no service during a good signal strength, etc. Provides a software update to address.

(d)     May 4, 2017, Service Bulletin 08-007-17 REV.B for, among other things: radio resetting, radio controls and touchscreen freezing up or becomes inoperative, rear view camera does not display on screen, inaccurate location of vehicle on the navigation screen, map screen does not return after rear view camera clears, navigation GPS not available, no sound or navigation when the radio is in customer mode, when making an SOS call the display shows the vehicle phone has no service during a good signal strength, etc. Provides a software update to address.

(e)     May 12, 2017, Service Bulletin 08-007-17 REV.C for, among other things: radio resetting, radio controls and touchscreen freezing up or becomes inoperative, rear view camera does not display on screen, inaccurate location of vehicle on the navigation screen, map screen does not return after rear view

camera clears, navigation GPS not available, no sound or navigation when the radio is in customer mode, when making an SOS call the display shoes the vehicle phone has no service during a good signal strength, etc. Provides a software update to address.

(f)    August 10, 2017, Service Bulletin 08-007-17 REV.E for, among other things: radio resetting, radio controls and touchscreen freezing up or becomes inoperative, rear view camera does not display on screen, inaccurate location of vehicle on the navigation screen, map screen does not return after rear view camera clears, navigation GPS not available, no sound or navigation when the radio is in customer mode, when making an SOS call the display shoes the vehicle phone has no service during a good signal strength, etc. Provides a software update to address.

(g)    September 8, 2017, Service Bulletin 08-007-17 REV.F for, among other things: Radio freezes and resets after start-up, navigation will not load when selected on the radio screen, rear view camera does not displace on the screen, applications not launching from the app screen, inaccurate location of the

vehicle on navigation map, map screen does not return after rear view camera clears, not sound or navigation when the radio is in customer mode, when making an SOS call the display shows the vehicle phone has no service during a good signal strength, etc. Provides a software update to address.

(h)   September 14, 2017, Service Bulletin 08-007-17 REV.G for, among other things: Radio freezes and resets after start-up, navigation will not load when selected on the radio screen, rear view camera does not displace on the screen, applications not launching from the app screen, inaccurate location of the vehicle on navigation map, map screen does not return after rear view camera clears, Navigation GPS not available, when making an SOS call the display shows the vehicle phone has no service during a good signal strength, etc. Provides a software update to address.

(i)   February 19, 2019, Service Bulletin 08-016-19 for, among other things: Warning chimes will not turn off, audio distortion, frozen menu bar, backup camera screen blank, radio control screen is blank or locked, radio resets intermittently, etc. Provides a software update to address.

(j)     March 21, 2019, Service Bulletin 08-016-19 REV.A for, among other things: Warning chimes will not turn off, audio distortion, frozen menu bar, backup camera screen blank, radio control screen is blank or locked, radio resets intermittently, etc. Provides a software update to address.

(k)     April 10, 2019, Service Bulletin 08-016-19 REV.B for, among other things: Warning chimes will not turn off, audio distortion, frozen menu bar, backup camera screen blank, radio control screen is blank or locked, radio resets intermittently, etc. Provides a software update to address.

(l)     April 17, 2019, Service Bulletin 08-016-19 REV.C for, among other things: Warning chimes will not turn off, audio distortion, frozen menu bar, backup camera screen blank, radio control screen is blank or locked, radio resets intermittently, etc. Provides a software update to address.

(m)     October 2, 2019, Service Bulletin 08-016-19 REV.D for, among other things: Warning chimes will not turn off, audio distortion, frozen menu bar, backup camera screen blank, radio control screen is blank or locked, radio resets intermittently, etc. Provides a software update to address.

(n)    October 4, 2019, Service Bulletin 08-016-19 REV.E for, among other things: Warning chimes will not turn off, audio distortion, frozen menu bar, backup camera screen blank, radio control screen is blank or locked, radio resets intermittently, etc. Provides a software update to address.

(o)    October 19, 2019, Service Bulletin 08-016-19 REV.F for, among other things: Audio distortion, frozen menu bar, backup camera screen blank, radio control screen is blank or locked, radio resets intermittently, etc. Provides a software update to address.

(p)    May 15, 2019, GPOP – Issue Review System 9003710 for: single seat back screen not functional. Requires a check for DTCs in the Video Routing Monitor as well as verifications of connections to the screen before replacing parts.

(q)    May 15, 2019, GPOP – Issue Review System 9003596 for: rear seat entertainment system video routing module. Providing steps required prior to replacement of the Video Routing Module when the rear screens re not functioning.

71.    Importantly, these TSBs, manufacturer communications and/or recalls were not, and are not, disseminated to owners or prospective buyers.

72. Federal law requires automakers like FCA to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See TREAD Act,* Pub. L. No. 106-414, 114 Stat. 1800 (2000).

73. Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including those which are safety-related. *Id.* Thus, FCA knew or should have known of the many complaints about the UConnect Defect logged by NHTSA Office of Defects Investigation ("ODI"). The content, consistency, and disproportionate number of those complaints alerted, or should have alerted, FCA to the UConnect Defect.

74. With respect solely to the Class Vehicles, the following are but a few examples of the many complaints concerning the UConnect Defect which are available through NHTSA's website, www.safercar.gov. Many of the complaints reveal that FCA, through its network of dealers and repair technicians, has been made aware of the UConnect Defect. In addition, the complaints indicate that despite

having knowledge of the UConnect Defect and even armed with knowledge of the exact vehicles affected, FCA often refused to diagnose the defect or otherwise attempt to repair it while Class Vehicles were still under warranty. When FCA did attempt repairs, it merely replaced the UConnect with a similarly defective UConnect.

Date of Complaint:      March 7, 2018
Date of Incident:       March 1, 2018
NHTSA ID No.:           11076628
VIN:                    2C4RC1GG1HR****
Vehicle Type:           2017 Chrysler Pacifica

LEASED A NEW PACIFICA A FEW MONTHS AGO. AROUND THE END OF FEBRUARY THE VEHICLE STALLED WHILE PARKED. THEN WHILE STARTING UP THE VEHICLE IN MARCH THE VEHICLE INFORMATION SYSTEM SCREEN SHUT OFF FOR NO REASON, THIS INCLUDED SENSORS, BACK UP CAMERAS , NAV , CLIMATE, RADIO ETC.

Date of Complaint:      December 29, 2017
Date of Incident:       October 14, 2017
NHTSA ID No.:           11057493
VIN:                    2C4RC1GG0HR****
Vehicle Type:           2017 Chrysler Pacifica

THE UCONNECT ENTERTAINMENT SYSTEM WILL ALSO MALFUNCTION FROM TIME TO TIME. SEVERAL SOFTWARE UPDATES HAVE BEEN INITIATED, ADDRESSING WINDOW AND TRANSMISSION CONCERNS ACCORDING TO THE DEALERSHIP'S SERVICE DEPARTMENT. YET, THE VEHICLE DOES NOT FUNCTION PROPERLY, WHERE IDLE AND TRANSMISSION FUNCTIONING OFTEN APPEARS COMPROMISED (ROUGH IDLE, ROUGH SHIFTING, SUDDEN RPM INCREASES AND ACCELERATION BURSTS WHEN SHIFTING FROM REVERSE TO DRIVE). I FEAR THIS CAR IS NOT SAFE FOR MY WIFE AND THREE YOUNG CHILDREN.

Date of Complaint:      September 20, 2017
Date of Incident:       September 6, 2017
NHTSA ID No.:           11024613
VIN:                    2C4RC1BG6HR ****
Vehicle Type:           2017 Chrysler Pacifica

AFTER FOLLOWING GIVEN INSTRUCTIONS MY RADIO

UCONNECT SYSTEM HAS BECOME NONFUNCTIONAL

I HAVE BEEN TOLD BY THE MANUFACTURER I HAVE TO WAIT FOR AN UPDATE OR A FIX. IT HAS BEEN OVER A WEEK ALREADY...UPDATED 10/25/17 *BF

Date of Complaint:       August 17, 2017
Date of Incident:        July 1, 2017
NHTSA ID No.:            11016084
VIN:                    N/A
Vehicle Type:           2017 Chrysler Pacifica

MY TOUCH SCREEN IS UNRESPONSIVE THREE FOURTHS OF THE TIME THAT I TRY IT. YOU ARE GOING TO MAKE ME PUT A SPECIFIC DATE HERE BUT THAT DOES NOT APPLY BECAUSE IT'S BEEN SINCE THE BEGINNING AND HERE I AM AND IT RIGHT NOW AND IT'S DOING IT AGAIN.

Date of Complaint:       August 19, 2017
Date of Incident:        August 1, 2017
NHTSA ID No.:            11120139
VIN:                    2C3CCABG1HH****
Vehicle Type:           2017 Chrysler 300

LREAR CAMERA LOCKS UP ON SCREEN AND YOU CAN NOT DO ANYTHING WITH COMPUTER,VEHICLE MUST BE TURNED OFF AND RESTARTED

Date of Complaint:       July 10, 2017
Date of Incident:        April 4, 2017
NHTSA ID No.:            11004078
VIN:                    2C4RC1EG5HR****
Vehicle Type:           2017 Chrysler Pacifica

TL* THE CONTACT OWNS A 2017 CHRYSLER PACIFICA. THE CONTACT STATED THAT THE BACK UP CAMERA DID NOT CEASE TO FUNCTION EVEN AFTER BEING SHIFTED INTO DRIVE. THE FAILURE OCCURRED INTERMITTENTLY. THE VEHICLE WAS TAKEN TO THE ROUTE 1 CHRYSLER DEALER, BUT THE FAILURE COULD NOT BE DUPLICATED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE AND STATED THAT NOTHING COULD BE DONE. THE MANUFACTURER INSTRUCTED THE CONTACT TO STOP CALLING AND PROVIDED CASE NUMBER: 31318899. THE FAILURE MILEAGE WAS APPROXIMATELY 16,000.

### Customer Complaints on Third-Party Websites

75.    Consumers similarly complained about the defect on various online forums. Below are some examples.

- "Over the air uconnect update caused the radio to freeze.  As a result, the uconnect console screen is frozen  or rather flashes the Chrysler/Sirius  logo  constantly.    This  "update"  disabled radio/Bluetooth/electronic  controls/navigational/functions.    Chrysler says it sent a "fix" to the dealer.  The dealer says it has not received it.  I am in an endless loop.
  I have been driving for weeks without a radio or handsfree or navigational assistance.  I use my phone as a "substitute".  I need to trade this car in.  for all the nice features of a large car, I never would have leased it without radio functions."   (Complaint posted to CarComplaints.com dated September 8, 2017).

- "Our theater system has not worked properly since we purchased the new vehicle the new vehicle 4 months ago.  The car is at the dealership for repair, but the software patches have not worked and have corrupted the entire system.  Chrysler does not know how to fix the problem or what is causing the issue.  My band new $50,000+ vehicle has been sitting at the dealership with no expectation on when the problem will be fixed.  (Complaint posted to CarComplaints.com dated April 27, 2018).

- "On numerous occasions the navigation screen would go black or freeze up. On multiple occasions the uconnect theater would not work. Everytime we took it to the dealership said it was fine and didn't need investigate the issue.  Recently, we went to the store and made several stops at different stores on our last stop the van would not recognize the keys.  We couldn't lock or unlock the van.  I had to pull out the emergency key to get into the van.  Once inside the van didn't recognize the keys.  I ended up having to google the issue for a work around to get home.  The entire ride there was a display stating that the key was not in the vehicle.  We made on more stop and an left the van running.  Ten minutes later it recognized the key and a uconnect started working again.  The van is a 2018 and less than a year old.  This is unacceptable  for  a  new  vehicle.    (Complaint  posted  to CarComplaints.com dated January 31, 2019).

- "Two wonky situations with Uconnect Theater:
  1.  The screen displays the backup camera while driving forward under 16/17 MPH then switches to the blue "X" screen of death above 16/17 MPH.  It will flip back and forth depending on the speed driven.  The touchscreen is unusable in this condition.  Nothing seems to fixes the issue except stopping/turning off the van.  No patter as to why this situation occurs.
  2.  If a DVD/bluray is in the van while parked then the van is started while the move continues to play, shortly thereafter, the head-unit displays the blue "x" screen of death.  Nothing seems to fixes the issue except stopping/turning off the van.
  It feels lik it's a software issue that can be fixed with an bug fix update.  Asked about this with two difference dealers and they both give the same shoulder shrug."  (Complaint posted to CarComplaints.com dated April 18, 2019.).

- "Technology-wise I give it 2 stars. The screen interface is just ok, it's main issue is glitches.  The backup camera would not work from time

36

to time, volume would get stuck, screens would jump back and forth, sometimes the entire interface will simply reset itself mid-drive. Talk about distraction." (Complaint posted to kbb.com dated April 20, 2019).

- "Backup camera is completely black 90% of the time. The rest of the time it works great. Just paid $125 for a diagnostic by the dealer. Dealer says we need a new camera and wiring harness. Cost is about $650 plus tax. Has anybody been here? Thanks, pt." (Complaint posted to https://www.pacificaforums.com/threads/backup-camera-failure.43955/).

- "This morning was the second time now that our uconnect screen has gone somewhat berserk and won't respond to touch. It just quickly flashes continuously through each of the screens (radio, climate, phone, settings, etc) and won't stop. We've tried turning the screen off, but it just automatically turns itself back on and continues the flashing. We've tried resetting the system and that didn't stop it either. We have to turn the car off completely to get it to stop. When this happens when you're in the middle of a commute, it's extremely frustrating and distracting. Has anyone else experienced this?" (Complaint posted to https://www.pacificaforums.com/threads/uconnect-flashes-through-screens-uncontrollably.21129/#post-272665).

- "Hi All
My 2018 Pacifica Limited is 10 days old (new) and since last night the Uconnect screen has been going on and off in 30 seconds cycles. When it's off, I have no backup camera, no Bluetooth phone connection, no media/radio etc. That's not a nice welcome to a new car
Anyone had this?" (Complaint posted to https://www.pacificaforums.com/threads/uconnect-8-4-crashing.30458/#post-399490 on February 11, 2018).

- "I have a 2018 pacifica and the rearview camera doesnt show when in reverse. Not sure if their is a glitch or a software update that I'm missing?" (Complaint posted to https://www.pacificaforums.com/threads/rearview-camera-not-working.40177/ on September 26, 2018).

76.     FCA had superior and exclusive knowledge of the UConnect Defect and knew or should have known that the defect was not known or reasonably discoverable by Plaintiffs and Class Members before they purchased or leased the Class Vehicles.

77.     Plaintiffs are informed and believe, and based thereon allege, that before Plaintiffs purchased their respective Class Vehicles, and since early 2015,

FCA knew about the UConnect Defect through sources not available to consumers, including pre-release testing data, early consumer complaints to FCA and its dealers, testing conducted in response to those consumer complaints, high failure rates of the UConnect, data demonstrating the inordinately high volume of replacement part sales, and other aggregate data from FCA dealers about the problem.

78.     FCA is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, FCA conducts tests, including pre-sale durability testing on incoming components, including the UConnect, to verify the parts are free from defect and align with FCA's specifications.[18] Thus, FCA knew or should have known the UConnect was defective and prone to put drivers in dangerous situations due to the inherent risk of the UConnect Defect failing and causing the backup camera, navigation, or phone connectivity to be compromised or fail.

79.     Additionally, Defendant knew or should have known of this widespread defect from the sheer number of reports received from dealerships. Defendant FCA's customer relations department, which interacts with individual dealerships to identify potential common defects, received numerous reports regarding the

---

[18] Akweli Parker, *How Car Testing Works*, HowStuffWorks.com (Mar. 11, 2009), http://auto.howstuffworks.com/car-driving-safety/safety-regulatory-devices/car-testing.htm ("The idea behind car testing is that it allows manufactures to work out all the kinks and potential problems of a model before it goes into full production.") (last visited June 26, 2020). Exhibit 12.

UConnect Defect, which led to the release of the TSBs, manufacturer communications and/or recalls.

80.    FCA's customer relations department also collects and analyzes field data including, but not limited to, repair requests made at dealerships, technical reports prepared by engineers who have reviewed vehicles for which warranty coverage is being requested, parts sales reports, and warranty claims data.

81.    Defendant's warranty department similarly analyzes and collects data submitted by its dealerships to identify warranty trends in its vehicles. It is Defendant's policy that when a repair is made under warranty the dealership must provide FCA with detailed documentation of the problem and a complete disclosure of the repairs employed to correct it. Dealerships have an incentive to provide detailed information to Defendant, because they will not be reimbursed for any repairs unless the justification for reimbursement is sufficiently detailed.

82.    The existence of the UConnect Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a Class Vehicle.  No consumer would have reason to search for the UConnect Defect in any publicly available resources. They instead reasonably rely on FCA to either disclose the defect, or sell a vehicle without the UConnect Defect, as FCA is obligated to do by law. Further, even had consumers searched for problems with the UConnect, FCA itself has never publicly affirmatively disclosed the UConnect

Defect. Instead, FCA repeatedly told vehicle owners that there was no defect, that it had repaired the UConnect Defect, or that it was unable to duplicate the Defect. Had Plaintiffs and other Class Members known of the UConnect Defect, they would have paid less for the Class Vehicles or would not have purchased or leased them.

83.     Reasonable consumers, like Plaintiffs, expect that a vehicle's UConnect is safe, will function in a manner that will not pose a safety risk, and is free from defects. Plaintiffs and Class Members further reasonably expect that FCA will not sell or lease vehicles with known safety defects, such as the UConnect Defect, and will disclose any such defects to its consumers when it learns of them. They did not expect FCA to conceal and fail to disclose the UConnect Defect to them, and to then continually deny its existence.

**FCA Has Actively Concealed the UConnect Defect**

84.     Despite its knowledge of the UConnect Defect in the Class Vehicles, FCA actively concealed the existence and nature of the defect from Plaintiffs and Class Members.  Specifically, FCA failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

(a)     all known material defects or material nonconformity of the Class Vehicles, including the defects pertaining to the UConnect;

(b)     that the Class Vehicles, including the UConnect, were not in good in working order, were defective, and were not fit for their

intended purposes; and

(c)    that the Class Vehicles and the UConnect were defective, even though FCA learned of such defects as early as early 2015.

85.    When consumers present their Class Vehicles to an authorized FCA dealer for UConnect repairs, rather than repair the problem under warranty, FCA dealers either inform consumers that their vehicles are functioning properly or conduct repairs that merely mask the UConnect Defect.

86.    FCA has caused Class Members to expend money at its dealerships to diagnose, repair or replace the Class Vehicles' UConnect and/or related components, despite FCA's knowledge of the UConnect Defect.

## FCA Has Unjustly Retained A Substantial Benefit

87.     On information and belief, Plaintiffs allege that Defendant unlawfully failed to disclose the alleged defect to induce them and other putative Class Members to purchase or lease the Class Vehicles.

88.    Plaintiffs further allege that Defendant thus engaged in deceptive acts or practices pertaining to all transactions involving the Class Vehicles, including Plaintiffs'.

89.    As discussed above therefore, Plaintiffs allege that Defendant unlawfully induced them to purchase their respective Class Vehicles by concealing a material fact (the defective UConnect) and that they would have paid less for the

Class Vehicles, or not purchased them at all, had they known of the defect.

90.     Accordingly, Defendant's ill-gotten gains, benefits accrued in the form of increased sales and profits resulting from the material omissions that did - and likely will continue to - deceive consumers, should be disgorged.

## CLASS ACTION ALLEGATIONS

91.     Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

92.     The Class and Sub-Classes are defined as:

> **Class**:  All persons in the United States who purchased or leased any 2017-2019 Chrysler Pacifica or 300 Vehicles equipped with FCA US LLC's "UConnect" infotainment system ("Class Vehicles") designed, manufactured, marketed, distributed, sold, warranted, and/or serviced by FCA US, LLC.

> **Florida Sub-Class**:  All members of the Class who purchased or leased a Class Vehicle in the State of Florida.

> **Pennsylvania Sub-Class**:  All members of the Class who purchased or leased a Class Vehicle in the Commonwealth of Pennsylvania.

93.     Excluded from the Class and Sub-Classes are:  (1) Defendant, any entity or division in which Defendant has a controlling interest, and their legal

representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's immediate family and staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein.  Plaintiffs reserve the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

94.  <u>Numerosity</u>:  Although the exact number of Class Members is uncertain, and can only be ascertained through appropriate discovery, the number is significant enough, well into the multiple thousands or hundreds of thousands, such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.  The Class Members are readily identifiable from information and records in Defendant's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

95.  <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by FCA.  The representative Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in that, for example, they have incurred or will incur the cost of repairing or replacing the defective UConnect

and/or its components.  Furthermore, the factual bases of FCA's misconduct are common to all Class Members and represent a common thread resulting in injury to the Class.

96.   <u>Commonality</u>:  There are numerous questions of law and fact common to Plaintiffs and the Class that predominate over any question affecting Class Members individually.  These common legal and factual issues include, but are not necessarily limited to, the following:

(a)   Whether Class Vehicles suffer from defects relating to the Uconnect system;

(b)   Whether the defects relating to the Uconnect system constitute an unreasonable safety risk;

(c)   Whether Defendant knew about the defects pertaining to the UConnect and, if so, how long Defendant has known of the defect;

(d)   Whether the defective nature of the UConnect constitutes a material fact;

(e)   Whether Defendant has had an ongoing duty to disclose the defective nature of the Uconnect system to Plaintiffs and Class Members;

(f)   Whether Plaintiffs and the other Class Members are entitled to

equitable relief, including a preliminary and/or a permanent injunction;

(g)    Whether Defendant knew or reasonably should have known of the defects pertaining to the Uconnect system before it sold and leased Class Vehicles to Class Members;

(h)    Whether Defendant should be declared financially responsible for notifying the Class Members of problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective Uconnect system and/or its components;

(i)    Whether Defendant is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective Uconnect systems and/or its components;

(j)    Whether Defendant breached the implied warranty of merchantability, including pursuant to the Magnuson-Moss Warranty Act;

(k)    Whether Defendant breached its express warranties; and

(l)    Whether Defendant breached written warranties pursuant to the Magnuson-Moss Warranty Act.

97.    <u>Adequate Representation</u>:  Plaintiffs will fairly and adequately protect

the interests of the Class Members.  Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to vigorously prosecute this action.

98.    Predominance and Superiority:  Plaintiffs and Class Members have all suffered, and will continue to suffer, harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue unabated without remedy or relief.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that it will conserve the resources of the courts and the litigants and promote consistency and efficiency of adjudication.

**FIRST CAUSE OF ACTION**
**(Breach of Express Warranty)**
**(On Behalf of the Class and the Sub-Classes)**

99.    Plaintiffs incorporate by reference the allegations contained in the other paragraphs of this Complaint.

100.   Plaintiffs bring this claim individually and on behalf of the members of the Class and Sub-Classes.

101.   FCA is a "merchant" as defined under the Uniform Commercial Code (UCC).

102.   The Class Vehicles are "goods" as defined under the UCC.

103.   FCA provided a New Vehicle Limited Warranty that expressly warranted FCA would repair any defects in materials or workmanship free of charge during the applicable warranty periods.

104.   Plaintiffs and Class Members experienced the UConnect Defect within the warranty period.

105.   FCA breached its warranty by failing to provide an adequate repair when Plaintiffs and the Class Members presented their Class Vehicles to authorized FCA dealers for repair of the Uconnect Defect.

106.   The warranty formed the basis of the bargain that was reached when Plaintiffs and Class Members purchased or leased their Class Vehicles.

107.   As a result of FCA's breach of its express warranty, Plaintiffs and Class Members have suffered economic damages including, but not limited to, the loss of the benefit of their bargain, loss of vehicle use, diminished value, substantial loss in value and resale value, out-of-pocket expenses for maintenance and service that they otherwise would not have incurred but for the UConnect Defect.

108.   Plaintiffs and Class Members were not required to notify FCA of the breach or were excused from doing so because affording FCA a reasonable opportunity to cure its breach would have been futile.

109.   Plaintiffs and Class Members provided FCA with notice of the issues complained of herein within a reasonable time by presenting their Class Vehicles to authorized FCA dealers for repair of the UConnect defect.  FCA also received notice of the issues complained of herein by numerous complaints made directly to FCA and online, and from internal sources.

110.   Plaintiffs and Class Members have complied with all obligations under the warranty or otherwise have been excused from performance of such obligations as a result of FCA's conduct described herein.

111.   In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by FCA to limit its express warranty in a manner that would exclude or limit coverage for the UConnect Defect, including benefit-of-the-bargain, incidental, or consequential damages, would cause the warranty to fail of its essential purpose. Plaintiffs and Class Members have presented their Class Vehicles to FCA's authorized dealers on numerous occasions and FCA has failed to remedy the UConnect Defect.  As a result, Plaintiffs and Class Members are left with defective vehicles that pose a safety hazard and do not function as intended and, therefore, have been deprived of the benefit of their bargains.

112.   In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by FCA to limit its express warranty in a manner that would exclude or limit coverage for the UConnect Defect would be unconscionable. FCA's warranties were adhesive and did not permit negotiations. FCA possessed superior knowledge of the UConnect Defect, which is a latent defect, prior to offering Class Vehicles for sale. FCA concealed and did not disclose the UConnect Defect, and FCA did not remedy the UConnect Defect prior to sale (or afterward).

**SECOND CAUSE OF ACTION**
**(Breach of Written Warranty under the Magnuson-Moss Warranty Act,**
**15 U.S.C. § 2303 *et seq*.)**
**(On Behalf of the Class and the Sub-Classes)**

113.   Plaintiffs incorporate by reference the allegations contained in the other paragraphs of this Complaint.

114.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Class and the Sub-Classes against Defendant.

115.   Defendant provided all purchasers and lessees of the Class Vehicles with an express warranty described *infra*, which became a material part of the bargain. Accordingly, Defendant's express warranty is an express warranty under state law.

116.   The UConnect and its component parts were manufactured and/or installed in the Class Vehicles by Defendant and are covered by the express

warranty.

117.    In a section entitled "What's Covered," Defendant's express warranty provides in relevant part that "The Basic Limited Warranty covers the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation." The warranty further provides that "You pay nothing for these repairs. These warranty repairs or adjustments—including all parts and labor connected with them—will be made by your dealer at no charge, using new or remanufactured parts."

118.    According to FCA, "The Basic Limited Warranty lasts for 36 months from the date it begins or for 36,000 miles on the odometer, whichever occurs first."

119.    Defendant breached the express warranties by selling and leasing Class Vehicles with the UConnect Defect, requiring repair or replacement within the warranty period, and refusing to honor the express warranty by repairing or replacing, free of charge, the UConnect and its component parts, and instead, replacing the defective UConnect and its components with equally defective UConnect and components. By simply replacing Plaintiffs' and Class Members' defective UConnect with similarly defective parts, FCA has failed to "repair" the defects as alleged herein.

120.    Plaintiffs and the Class were not required to notify FCA of the breach

or were excused from doing so because affording FCA a reasonable opportunity to cure its breach of written warranty would have been futile.

121.   Plaintiffs and the Class provided FCA with notice of the issues complained of herein within a reasonable time by presenting their Class Vehicles to authorized FCA dealers for repair of the UConnect defect.  FCA also had notice of the issues complained of herein by numerous complaints made directly to FCA and online, and from internal sources.

122.   As a direct and proximate cause of Defendant's breach, Plaintiffs and the other Class Members have suffered, and continue to suffer, damages, including economic damages at the point of sale or lease. Additionally, Plaintiffs and the other Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

123.   Plaintiffs and the other Class Members are entitled to legal and equitable relief against Defendant, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

### THIRD CAUSE OF ACTION
### (Breach of Implied Warranty of Merchantability)
### (On Behalf of the Class and Sub-Classes)

124.   Plaintiffs incorporate by reference the allegations contained in the other

paragraphs of this Complaint.

125.   Plaintiffs bring this cause of action on behalf of themselves and the members of the Class and the Sub-Classes.

126.   FCA is a "merchant" as defined under the UCC.

127.   The Class Vehicles are "goods" as defined under the UCC.

128.   A warranty that the Class Vehicles were in merchantable quality and condition arises by operation of law with respect to transactions for the purchase and lease of Class Vehicles.  Defendant provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

129.   However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles suffered from the inherent UConnect Defect at the time of sale and thereafter.

130.   Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

131.   Plaintiffs and the Class were not required to notify FCA of the breach or were excused from doing so because affording FCA a reasonable opportunity to cure its breach of implied warranty would have been futile.

132.   FCA also had notice of the issues complained of herein by the

presentation of Plaintiffs' Class Vehicles to authorized FCA dealers for repair of the Uconnect defect, numerous complaints made directly to FCA and online, and from internal sources.

133.  Defendant has been afforded a reasonable opportunity to cure its breach, including when Plaintiffs and Class Members brought their vehicles in for diagnoses and repair of the UConnect system.

134.  Because Plaintiffs purchased their vehicles from authorized FCA dealers, Plaintiffs are in privity with FCA since an agency relationship establishes privity for purposes of the breach of implied warranty claims.  In addition, privity is not required because Plaintiffs are intended third-party beneficiaries of Defendant's implied warranties.

135.  As a result of Defendant's breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.

## FOURTH CAUSE OF ACTION
### (Breach of Implied Warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2303 *et seq.*)
### (On Behalf of the Class and the Sub-Classes)

136.  Plaintiffs incorporate by reference the allegations contained in the other paragraphs of this Complaint.

137.  Plaintiffs bring this cause of action on behalf of themselves and the Class and the Sub-Classes against Defendant.

138.   The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

139.   Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

140.   Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

141.   FCA impliedly warranted that the Class Vehicles were of merchantable quality and fit for use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their UConnect were manufactured, supplied, distributed, and/or sold by FCA would provide safe and reliable transportation; and (ii) a warranty that the Class Vehicles and their UConnect would be fit for their intended use while the Class Vehicles were being operated.

142.   Contrary to the applicable implied warranties, the Class Vehicles and their UConnect at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, including the defective design of their UConnect. Accordingly, the Class Vehicles are not fit for their intended use.

143.   Defendant's breach of implied warranties has deprived Plaintiffs and Class Members of the benefit of their bargain.

144.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25.00.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000.00 (exclusive of interests and costs) computed based on all claims to be determined in this suit.

145.   Plaintiffs and the Class were not required to notify FCA of the breach or were excused from doing so because affording FCA a reasonable opportunity to cure its breach have been futile.

146.   FCA also had notice of the issues complained of herein by the presentation of Plaintiffs' Class Vehicles to authorized FCA dealers for repair of the Uconnect defect, numerous complaints made directly to FCA and online, and from internal sources.

147.   Defendant has been afforded a reasonable opportunity to cure its breach, including when Plaintiffs and Class Members brought their vehicles in for diagnoses and repair of the UConnect.

148.   As a direct and proximate cause of Defendant's breach of implied warranties, Plaintiffs and Class Members sustained and incurred damages and other losses in an amount to be determined at trial.  Defendant's conduct damaged Plaintiffs and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

149. As a result of Defendant's violations of the Magnuson-Moss Warranty Act as alleged herein, Plaintiffs and Class Members have incurred damages.

## FIFTH CAUSE OF ACTION
**(Violation of Florida Deceptive and Unfair Trade Practices Act Fla. Stat. § 501.201, *et seq*.)**
**(On Behalf of the Florida Sub-Class)**

150. Plaintiffs incorporate by reference the allegations contained in the other paragraphs of this Complaint.

151. Plaintiff Pistorio brings this cause of action on behalf of himself and the Florida Sub-Class.

152. Plaintiff Pistorio and Florida Sub-class Members are "consumers" within the meaning of Fla. Stat. §501.203 (7).

153. Defendant engages in "trade or commerce" within the meaning of Fla. Stat. §501.203 (8) by offering for sale or lease the Class Vehicles to Plaintiff Pistorio and Florida Sub-class Members.

154. By failing to disclose and concealing the UConnect Defect from Plaintiff Pistorio and Florida Sub-class Members, FCA violated Fla. Stat. §501.204 (1), by engaging in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

155. FCA's unfair and deceptive acts or practices occurred repeatedly in FCA's trade or business, were capable of deceiving a substantial portion of the

purchasing public, and imposed a serious safety risk on the public.

156. FCA knew that the Class Vehicles suffered from an inherent defect, were defectively manufactured or designed or contained defective materials, and were not suitable for their intended use.

157. FCA's acts and practices, described herein, are unfair in violation of Florida law because it violates Florida public policy and warranty laws requiring a manufacturer to ensure that goods it places on the market are fit for their ordinary and intended purposes.

158. FCA acted in an unethical, unscrupulous, outrageous, oppressive, and substantially injurious manner, in at least the following respects:

    (a)   promoted and sold or leased Class Vehicles it knew were defective;

    (b)   failed to disclose the UConnect Defect;

    (c)   failed to make repairs or made repairs and provided replacements that caused Plaintiff and the Florida Sub-class members to experience repeated instances of failure, rendering the New Vehicle Limited Warranty useless; and

    (d)   minimized the scope and severity of the problems with the Class Vehicles, refusing to acknowledge that they are defective, and failing to provide adequate relief to

consumers.

159.    As a result of the UConnect defect, Plaintiff Pistorio and Florida Sub-class Members were harmed and suffered actual damages in that the Class Vehicles' UConnect systems are substantially certain to fail or have failed before their expected useful life has run.

160.    FCA had a duty to Plaintiff Pistorio and Florida Sub-class Members to disclose the UConnect Defect because:

> (a)    FCA was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' UConnect systems; and
>
> (b)    Plaintiff Pistorio and Florida Sub-class Members could not reasonably have been expected to learn or discover that their UConnect systems had a dangerous safety defect until it manifested.

161.    In failing to disclose the UConnect Defect, FCA knowingly and intentionally concealed material facts and breached its duty not to do so. Had Plaintiff Pistorio and Florida Sub-class Members known that the Class Vehicles' UConnect systems were defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

162.    Plaintiff Pistorio and Florida Sub-class Members are reasonable

consumers who do not expect the UConnect systems installed in their vehicles to exhibit the UConnect Defect.

163.  As a result of FCA's conduct, Plaintiff Pistorio and Florida Sub-class Members were harmed and suffered actual damages in that the Class Vehicles experienced and may continue to experience the UConnect Defect.

164.  As a direct and proximate result of FCA's unfair or deceptive acts or practices, Plaintiff Pistorio and Florida Sub-class Members suffered and will continue to suffer actual damages.

165.  Plaintiff Pistorio and Florida Sub-class Members are entitled to equitable relief, actual damages, including the diminished value of their Class Vehicles, attorneys' fees and costs, and any other relief provided by law.

## SIXTH CAUSE OF ACTION
### (Violations of Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq*.)
### (On Behalf of the Pennsylvania Sub-Class)

166.  Plaintiffs incorporate by reference the allegations contained in the other paragraphs of this Complaint.

167.  Plaintiff Murdock brings this cause of action on behalf of himself and the Pennsylvania Sub-Class.

168.  Plaintiff Murdock and the Pennsylvania Sub-class Members are "persons," as defined by 73 P.S. §201-2 (2), who may bring a private suit pursuant to 73 P.S. §201-9.2 because they purchased or leased the Class Vehicles primarily

for personal, family, or household purposes.

169.   FCA's practices, acts, policies and course of conduct, as described above, were intended to induce, and did induce, Plaintiff Murdock and the Pennsylvania Sub-class Members to purchase and/or lease the above-mentioned Class Vehicles with the UConnect Defect.

170.   FCA sold and/or leased the Class Vehicles knowingly concealing that they contained the design, manufacturing, and materials and/or workmanship defects.

171.   FCA's practices, acts, policies and course of conduct are actionable in that:

    (a)   FCA actively and knowingly omitted from Plaintiff Murdock and the Pennsylvania Sub-class Members at the time of purchase or lease of the Class Vehicles and thereafter, the design, manufacturing, and materials and/or workmanship defects of the UConnect systems in Class Vehicles; and

    (b)   FCA failed to give adequate warnings and notices regarding the use of, defects in, and problems with the UConnect systems to consumers who purchased or leased said Class Vehicles, despite the fact that FCA possessed prior

knowledge of the inherent defects to the UConnect system.

172.   FCA failed to disclose to and/or actively concealed the fact from Plaintiff Murdock and the Pennsylvania Sub-class Members, either through direct warnings or recall notices, that the UConnect system was defective.  Defendant's post-sale denial of Plaintiff Murdock and the Pennsylvania Sub-class Members' warranty claims and continuing failure to disclose the defect amounted to deceptive conduct under the Pennsylvania Unfair Trade Practices and Consumer Protection Law and occurred within six years of initiating this action.

173.   FCA's actions and/or omissions caused or certainly will cause Plaintiff Murdock and the Pennsylvania Sub-class Members to expend time and, upon information and belief, sums of money at FCA dealerships and elsewhere to repair and/or replace the UConnect system, despite the fact FCA had prior knowledge of the defects at the time of placing said vehicles into the stream of commerce.

174.   All the aforementioned conduct is and was deceptive and constitutes an unconscionable commercial practice in that Defendant has, by the use of knowing intentional material omissions, failed to disclose the true defective nature of the UConnect system.

175.   Under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-2, "unfair methods of competition" and "unfair or

deceptive acts or practices" include the following acts or omissions:

(a) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

(b) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(c) Advertising goods or services with intent not to sell them as advertised;

(d) Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made; and

(e) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

176. Plaintiff Murdock and members of the public were deceived by and relied upon FCA's omissions and failures to disclose, including but not limited to, FCA's failure to disclose the UConnect Defect.

177. There was a causal nexus between FCA's deceptive and unconscionable commercial practices and Plaintiff Murdock and the Pennsylvania

Sub-class Members being damaged as alleged herein and, therefore, Plaintiff Murdock and the Pennsylvania Sub-class are entitled to recover actual and/or statutory and/or punitive damages and/or trebled damages to the extent permitted by law in an amount to be proven at trial.

178.   In addition, Plaintiff Murdock and the Pennsylvania Sub-class seek the diminished value of their Class Vehicles, based on the difference between what Plaintiff Murdock and the Pennsylvania Sub-class Members paid for their Class Vehicles and what they would have paid, had they been informed of the defect.

179.   Plaintiff Murdock and the Pennsylvania Sub-class Members also seek restitution of all monies that FCA received as a result of selling the above-mentioned vehicles with an UConnect Defect at the time of purchase and/or lease.

180.   In addition, Plaintiff Murdock and the Pennsylvania Subclass Members seek reasonable attorneys' fees and costs.

**SEVENTH CAUSE OF ACTION**
**(Fraudulent Concealment and/or Fraud in the Inducement)**
**(On Behalf of the Class and the Sub-Classes)**

181.   Plaintiffs incorporate by reference the allegations contained in the other paragraphs of this Complaint.

182.   Plaintiffs bring this cause of action on behalf of themselves and the Class and the Sub-Classes against Defendant.

183.   Defendant intentionally and knowingly concealed, suppressed and/or

omitted material facts concerning the standard, quality or grade of the Class Vehicles, the presence of the UConnect Defect installed in the Class Vehicles, and the risk to the safety and reliability of the Class Vehicles due to the UConnect Defect.

184.   Defendant's intentional and knowing concealment, suppression and/or omission of these material facts was done with the intent that Plaintiffs and Class Members would rely on Defendant's omissions.

185.   As a direct result of Defendant's fraudulent conduct, Class Members have suffered actual damages.

186.   Defendant knew (including at the time of sale or lease and thereafter) that the Class Vehicles contained the UConnect Defect, but Defendant concealed the Defect and never intended to repair or replace the Defect during the warranty period.  To date, Defendant has not provided Plaintiffs or Class Members with a repair or remedy that will eliminate the Defect.

187.   Defendant owed a duty to disclose the Defect and its corresponding safety hazard to Plaintiffs and Class Members because Defendant possessed superior and exclusive knowledge regarding the Defect.  Rather than disclose the Defect, Defendant intentionally and knowingly concealed, suppressed and/or omitted material facts concerning the Defect so that Defendant could sell additional Class Vehicles and avoid the cost of repair or replacement.

188.   The Defect exposes drivers and occupants to an unreliable vehicle with a safety defect. Plaintiffs and Class Members had a reasonable expectation that the vehicles would not expose them and other vehicle occupants to such a safety hazard.   No reasonable consumer expects a vehicle to be designed, manufactured and assembled with a infotainment system that, like the UConnect in the Class Vehicles, freezes, loses back up camera functionality, loses navigation system functionality, displays black screens, performs repeated unintentional reboots, and generally fails to operate.

189.   Plaintiffs and Class Members would not have purchased or leased the Class Vehicles but for Defendant's omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Defect, or would have paid less for the Class Vehicles.

190.   Defendant knew its concealment and suppression of material facts were false and misleading and knew the effect of concealing those material facts. Defendant knew its concealment and suppression of the Defect would enable it to sell more Class Vehicles and would discourage Plaintiffs and Class Members from seeking replacement or repair of the Defect.   Further, Defendant intended to induce Plaintiffs and Class Members into purchasing or leasing the Class Vehicles and to discourage them from seeking replacement or repair of the Defect, to decrease costs and increase profits.

191.   Defendant acted with malice, oppression and fraud.

192.   Plaintiffs and Class Members reasonably relied upon Defendant's knowing concealment and omissions. As a direct and proximate result of Defendant's omissions and active concealment of material facts regarding the Defect and associated safety hazard, Plaintiffs and Class Members have suffered actual damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Negligent Misrepresentation)
### (On Behalf of the Class and the Sub-Classes)

193.   Plaintiffs incorporate by reference the allegations contained in the other paragraphs of this Complaint.

194.   Plaintiffs bring this cause of action on behalf of themselves and the Class and the Sub-Classes against Defendant.

195.   Defendant owed a duty to disclose the UConnect Defect and its corresponding safety hazard to Plaintiffs and Class Members because Defendant possessed superior and exclusive knowledge regarding the Defect and the associated risks.

196.   Defendant negligently omitted material facts concerning the Defect in the Class Vehicles. As a direct result of Defendant's negligent conduct, Class Members have suffered actual damages.

197.   The Defect is material because Plaintiffs and Class Members had a

reasonable expectation that the vehicles would not suffer from a defect that would expose drivers and occupants to dangerous safety issues and an unreliable vehicle. No reasonable consumer expects a vehicle to present a defect that exposes drivers and occupants to such a safety hazard.

198.   Plaintiffs and Class Members would not have purchased the Class Vehicles but for Defendant's negligent omissions of material facts regarding the nature and quality of the Class Vehicles and existence of the Defect, or would have paid less for the Class Vehicles.  Plaintiffs and Class Members justifiably relied upon Defendant's negligent omissions of material facts.

199.   As a direct and proximate result of Defendant's negligent omissions of material facts regarding the standard, quality or grade of the Class Vehicles and/or the presence of the Defect, Plaintiffs and Class Members have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

### NINTH CAUSE OF ACTION
### (For Unjust Enrichment)
### (On Behalf of the Class and the Sub-Classes)

200.   Plaintiffs incorporate by reference the allegations contained in the other paragraphs of this Complaint.

201.   Plaintiffs bring this cause of action, in the alternative, on behalf of themselves and the members of the Class and the Sub-Classes.

202.   As a direct and proximate result of Defendant's failure to disclose

known defects, Defendant has unjustly profited from the sale and lease of the Class Vehicles.

203.   As a direct and proximate result of Defendant's failure to disclose known defects in the Class Vehicles, Plaintiffs and Class Members have vehicles that require repeated, high-cost repairs.

204.   Defendant benefitted while Plaintiffs and the Class members, who originally overpaid for their Class Vehicles, have been forced to pay additional out-of-pocket costs and incur additional expense and losses in connection with repairs.

205.   Defendant has been unjustly enriched due to the defects in the Class Vehicles through the use of money paid that earned interest or otherwise added to Defendant's profits when said money should have remained with Plaintiffs and Class Members and/or otherwise would not have been conferred on Defendant.

206.   It is inequitable for Defendant to retain the benefits of its misconduct.

207.   As a result of the Defendant's unjust enrichment, Plaintiffs and Class Members have suffered damages.

## RELIEF REQUESTED

208.   Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against Defendant, as follows:

> (a)   An order certifying the proposed Class and Sub-Classes, designating Plaintiffs as named representatives of the Class, and

designating the undersigned as Class Counsel;

(a)     A Declaration that the UConnect system in Class Vehicles is defective.

(b)     A declaration that Defendant is financially responsible for notifying all Class Members about the defective nature of the UConnect, including the need for appropriate repairs;

(c)     An order enjoining Defendant from further deceptive distribution, sales, and lease practices with respect to Class Vehicles; compelling Defendant to issue a voluntary recall for the Class Vehicles pursuant to 49 U.S.C. § 30118(a); compelling Defendant to remove, repair, and/or replace the Class Vehicles' defective UConnect and/or its components with suitable alternative product(s) that do not contain the defects alleged herein; enjoining Defendant from selling the Class Vehicles with the misleading information; and/or compelling Defendant to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed;

(d)     An award to Plaintiffs and the Class for compensatory, exemplary, and statutory damages, including interest, in an

amount to be proven at trial;

(e)    Any and all remedies provided pursuant to the Magnuson-Moss Warranty Act;

(f)    A declaration that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of its Class Vehicles or make full restitution to Plaintiffs and Class Members;

(g)    An award of attorneys' fees and costs, as allowed by law;

(h)    An award of pre-judgment and post-judgment interest, as provided by law;

(i)    Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

209.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all issues in this action so triable.

Dated:  July 7, 2020               Respectfully submitted,

*/s/ E. Powell Miller*_____
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Emily E. Hughes (P68724)
Dennis A. Lienhardt (P81118)
William Kalas (P82113)
**THE MILLER LAW FIRM, P.C**
950 West University Drive, Suite 300
Rochester, MI 48307
Tel: (248) 841-2200

epm@millerlawpc.com
ssa@millerlawpc.com
eeh@millerlawpc.com
dal@millerlawpc.com
wk@millerlawpc.com

Laurence Deutsch
Jeffrey L. Osterwise
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA  19103
Tel: (215) 875-3000
ldeutsch@bm.net
josterwise@bm.net

Steven R. Weinmann
Tarek H. Zohdy
Cody R. Padgett
Trisha K. Monesi
**CAPSTONE LAW APC**
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Tel: (310) 556-4811
Steven.Weinmann@capstonelawyers.com
Tarek.Zohdy@capstonelawyers.com
Cody.Padgett@capstonelawyers.com
Trisha.Monesi@capstonelawyers.com

Joshua H. Haffner, Esq.
Graham G. Lambert
**HAFFNER LAW PC**
445 South Figueroa Street, Suite 2625
Los Angeles, California 90071
Tel: (213) 514-5681
jhh@haffnerlawyers.com
gl@haffnerlawyers.com

*Attorneys for Plaintiffs and the Putative*
*Class*

71