UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Edward Pistorio, *et al.*,

      Plaintiffs,

v.                                Case No. 20-cv-11838

FCA US LLC                    Sean F. Cox
                                  United States District Court Judge

      Defendant.
_____/

## OPINION AND ORDER
## DENYING IN PART AND GRANTING IN PART
## DEFENDANT'S MOTION TO DISMISS

This is a putative class action of nationwide vehicle purchasers based on alleged defects in the Uconnect infotainment systems of vehicles manufactured by Defendant, FCA US LLC ("FCA"). Currently before the Court is FCA's motion to dismiss Plaintiffs' consolidated amended class action complaint pursuant to FED. R. CIV. P. 12(b)(6). (ECF No. 54). The motion has been fully briefed, and a hearing was held on December 9, 2021.

For the reasons stated below, the Court DENIES in part and GRANTS in part FCA's motion. Specifically, the Court shall:

- GRANT FCA's motion as to the claims on behalf of a nationwide class and DISMISS Counts 1, 2, 3, and 4;

- GRANT FCA's motion as to the breach of warranty claims under Florida law and DISMISS Counts 18 and 19;

- GRANT FCA's motion as to the breach of implied warranty claims under Alabama and Illinois law and DISMISS Counts 5 and 24;

- GRANT FCA's motion as to the negligent misrepresentation claim under Alabama law and DISMISS Count 9;

- GRANT FCA's motion as to the Michigan Consumer Protections Act claim and DISMISS Count 33;

- GRANT FCA's motion as to the unjust enrichment claims and DISMISS Counts 4, 10, 17, 23,29, 35, and 41; and

- DENY the remainder of FCA's motion. Counts 6, 7, 8, 11, 12, 13, 14, 15, 16, 20, 21, 22, 25, 26, 27, 28, 30, 31, 32, 34, 36, 37, 38, 39, and 40 shall remain.

## BACKGROUND

On July 7, 2020, Plaintiffs initiated this action. (ECF No. 1). On August 12, 2021, Plaintiffs Edward Pistorio ("Pistorio"), Paul Murdock ("Murdock"), Daniel Przekop ("Przekop"), Hasan Aktulga ("Aktulga"), Sandra and Thomas Kloszewski ("the Kloszewskis"), Randall Courtney ("Courtney"), Corey Gerritsen ("Gerritsen") and Sara Elice ("Elice"), Justin and Elizabeth Bagley ("the Bagleys"), and Marcus Swindle ("Swindle") (collectively "Plaintiffs") filed Plaintiffs' Consolidated Amended Class Action Complaint and Jury Demand (the "Amended Complaint"). Plaintiffs filed this action for themselves and "on behalf of all persons in the United States who purchased or leased any 2017-2019 Chrysler Pacifica or Chrysler 300 vehicles equipped with FCA US LLC's "Uconnect" infotainment system ("Class Vehicles") designed, manufactured, marketed, distributed, sold, warranted, and/or serviced" by FCA. (Am. Compl., ECF No. 49, at PageID 1123).

**The Claims**

The Amended Complaint is organized by the claims brought on behalf of the Nationwide Class (Counts 1-4) and those brought on behalf of the individual state sub-classes: the Alabama

Sub-Class (Counts 5-10); the California Sub-Class (Counts 11-17); the Florida Sub-Class (Counts 18-23); the Illinois Sub-Class (Counts 24-29); the Michigan Sub-Class (Counts 30-35); and the Pennsylvania Sub-Class (Counts 36-41). (Am. Compl., at PageID 1195- 1296).

The claims brought on behalf of the Nationwide Class are a violation of the Magnusson-Moss Warranty Act, 15 U.S.C. §§ 2301et seq. ("MMWA") (Count 1); fraudulent concealment (Count 2); negligent misrepresentation (Count 3); and unjust enrichment (Count 4).

The claims brought on behalf of the Alabama Sub-Class are breach of express warranty (Ala. Code § 7-2-313) (Count 5); breach of implied warranty of merchantability (Ala. Code § 7-2314) (Count 6); fraudulent concealment (based on Alabama law) (Count 7); violation of the Alabama Deceptive Trade Practices Act (Ala. Code § 8-19-1, *et. seq.*) (Count 8);  negligent misrepresentation (based on Alabama law) (Count 9); and unjust enrichment (based on Alabama law) (Count 10).

The claims brought on behalf of the California Sub-Class are breach of express warranty under the Song-Beverly Consumer Warranty Act (Cal. Civ. Code §§ 1791.2 & 1793.2(d)) (Count 11); breach of implied warranty pursuant to Song-Beverly Consumer Warranty Act (Cal. Civ. Code §§ 1792 & 1791.1, *et. seq.*) (Count 12); fraudulent concealment (based on California law) (Count 13); violation of California's Consumers Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*) (Count 14); violation of California Business & Professions Code § 17200, *et seq.* (Count 15); negligent misrepresentation (based on California law) (Count 16); unjust enrichment (based on California law) and (Count 17).

The claims brought on behalf of the Florida Sub-Class are breach of express warranty (Fla. Stat. § 672.313) (Count 18); breach of implied warranty of merchantability (Fla. Stat. § 672.314) (Count 19); fraudulent concealment (based on Florida law) (Count 20); violation of Florida

Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201 *et seq*.) (Count 21); negligent misrepresentation (based on Florida law) (Count 22); and unjust enrichment (based on Florida law) (Count 23).

The claims brought on behalf of the Illinois Sub-Class are breach of express warranty (810 ILCS 5/2-313) (Count 24); breach of implied warranty of merchantability (810 ILCS 5/2-314 and 5/2A-212) (Count 25); fraudulent concealment (based on Illinois law) (Count 26); violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1, *et seq*.) (Count 27); negligent misrepresentation (based on Illinois law) (Count 28); and unjust enrichment (based on Illinois law) (Count 29).

The claims brought on behalf of the Michigan Sub-Class are breach of express warranty (Mich. Comp. Laws Ann. §§ 440.2313 and 440.2860 (Count 30); breach of implied warranty of merchantability (Mich. Comp. Laws Ann. § 440.2314) (Count 31); fraudulent concealment (based on Michigan law) (Count 32); violations of the Michigan Consumer Protection Act (Mich. Comp. Laws Ann § 445.903, et seq.) (Count 33); negligent misrepresentation (based on Michigan law) (Count 34); and unjust enrichment (based on Michigan law) (Count 35).

The claims brought on behalf of the Pennsylvania Sub-Class are breach of express warranty (13 Pa. Stat. Ann. § 2313) (Count 36); breach of implied warranty of merchantability (13 Pa. Stat. Ann. § 2314) (Count 37); fraudulent concealment (based on Pennsylvania law) (Count 38); violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 P.S. § 201-1, *et seq.*) (Count 39); negligent misrepresentation (based on Pennsylvania law) (Count 40); and unjust enrichment (based on Pennsylvania law) (Count 40).

Plaintiffs seek compensatory, statutory, and exemplary damages; disgorgement; restitution; an order enjoining FCA "from further . . . deceptive practices"; an order compelling

FCA "to reform its warranty . . . to cover the injury alleged; and attorney's fees. (Am. Compl., at PageID 1294-1296).

**The Named Plaintiffs**

Because this matter comes before the Court on a motion to dismiss the Amended Complaint, the following allegations in Plaintiffs' Amended Complaint are taken as true. (ECF No. 10); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

> Generally, Plaintiffs allege:
>
> FCA manufactured, marketed, distributed, and sold the Class Vehicles without disclosing that the Class Vehicles' Uconnect infotainment system ("Uconnect") was defective. Specifically, the Uconnect system is designed and/or manufactured with screens, including their operating software and routing modules, that suffer from freezing, loss of back up camera functionality, loss of navigation system functionality, black screens, repeated unintentional reboots, and general lack of operation ("Uconnect Defect"). The Uconnect Defect results in the need for frequent software updates and expensive replacements of screens and related components. FCA knew about the deficiencies of the Uconnect well before Plaintiffs purchased their Class Vehicles.

(ECF No. 49, at PageID 1123).

*Pistorio (Florida)* – In August 2017, Pistorio purchased a 2017 Chrysler 300S vehicle "equipped with Uconnect" from a third-party dealership in Florida. (Am. Compl. at PageID 1128). Pistorio alleges that within two months of purchasing the vehicle it began to malfunction. (Am. Compl. at PageID 1129). Specifically, Pistorio alleges that "the screen on his Uconnect device that displays the backup camera would freeze while the vehicle was in reverse," the "Uconnect screen would also turn completely black and then reboot" while Pistorio was operating the vehicle, and the Uconnect "lacked reliable Bluetooth connectivity." (Am. Compl. at PageID 1129-1130). Pistorio sought repairs from the dealership under his warranty in November 2017, September 2018, and August 2019. (Am. Compl. at PageID 1130) The dealership performed a software update on

the vehicle in September 2018, but could not replicate the reported issues during any other service visits. (Am. Compl. at PageID 1130).

*Murdock (Pennsylvania)* – In December 2016, Murdock purchased a 2017 Chrysler Pacifica "equipped with Uconnect" from a third-party dealership in Pennsylvania. (Am. Compl. at PageID 1132). Murdock alleges that within a few months of purchasing the vehicle his Uconnect began to malfunction. (Am. Compl. at PageID 1133). Specifically, Murdock alleges that the Uconnect screen would frequently turn black and reboot and that the Uconnect system had "chronic issues with the GPS, Bluetooth and audio system functionality." (Am. Compl. at PageID 1133). Murdock took the vehicle to the third-party dealership for repairs in March 2017 and January 2020. (Am. Compl. at PageID 1133). However, because the third-party dealership "refused to repair Plaintiff Murdock's Uconnect unless they observed the malfunction, despite repeated complaints to the dealership, Plaintiff's Uconnect system continued to malfunction. (Am. Compl. at PageID 1133). In August 2019, the Uconnect system "received an over-the-air remote software update without warning," but this did "not cure" the Uconnect defect. (Am. Compl. at PageID 1134). In January 2017, the dealership kept his vehicle for a week but was not able to repair the Uconnect system. (Am. Compl. at PageID 1134).

*Przekop (Alabama)* – In October 2019, Przekop purchased a 2019 Chrysler 300S "equipped with Uconnect" from a third-party dealership in Alabama. (Am. Compl. at PageID 1135). Przekop alleges that the day after purchasing his vehicle, he "observed his Uconnect malfunctioning. In particular, the Unconnect system had chronic issues with the GPS, Bluetooth and audio system functionality." (Am. Compl. at PageID 1136). Przekop also "had chronic issues with the screen in the Uconnect device that displays, among other things, the screen, without input from any passenger in the vehicle, which would turn black and reboot." (Am. Compl. at PageID 1136).

6

Przekop alleges that this malfunction occurred frequently and he found it "to be distracting and dangerous." (Am. Compl. at PageID 1136). Przekop took his vehicle to the dealership in November 2019, December 2019, and February 2020. (Am. Compl. at PageID 1136). At the December 2019 visit, the dealership replaced the radio unit Przekop's vehicle, but two days later the defects returned. (Am. Compl. at PageID 1136-1137).

*Aktulga (Michigan)* – In May 2018, Aktulga purchase a 2018 Chrysler Pacifica Hybrid "equipped with Uconnect" from a third-party dealership in Michigan. (Am. Compl. at PageID 1137). Within a year of purchasing his vehicle, Aktulga "observed his Uconnect system malfunctioning. (Am. Compl. at PageID 1138). In particular, [he] noticed that the screen on his Uconnect system that displays the backup camera would freeze while the vehicle was in reverse, preventing [him] from observing whether any person or thing was in the path of his vehicle." (Am. Compl. at PageID 1138). Further, "the screen would continue to display the frozen image from the backup camera, even after [he] started driving forward." (Am. Compl. at PageID 1139). The Uconnect DVD system in Aktulga's vehicle "would also turn completely black" while he was operating the vehicle. (Am. Compl. at PageID 1139). Aktulga also alleges that the "two Uconnect screens in the back of Plaintiff's vehicle would remain completely black and not reboot." (Am. Compl. at PageID 1139). Aktulga sought repairs from the dealership in August 2019 and August 2020, but the vehicle continues to exhibit the Uconnect defect.  (Am. Compl. at PageID 1139-1140).

*The Kloszewskis (Florida)* -   In September 2018, the Kloszewskis purchased a 2019 Chrysler Pacifica "equipped with Uconnect" from a third-party dealership in Florida. (Am. Compl. at PageID 1140). The Kloszewskis allege that within two months of purchasing their vehicle, they observed their Uconnect malfunctioning. (Am. Compl. at PageID 1141). Specifically, they allege

that the screen "quickly flickers and then goes completely black, preventing [them] from using the vehicle's back-up camera, its navigation system, and its climate controls." (Am. Compl. at PageID 1141). The Kloszewskis allege that this happens "nearly every time" they drive the vehicle. (Am. Compl. at PageID 1141). The Kloszewskis sought repairs from the dealership at 7,086 miles. (Am. Compl. at PageID 1142). On a subsequent visit, the dealership performed a software update, but it "did not repair the Uconnect Defect." (Am. Compl. at PageID 1142). The Kloszewskis made "at least six requests for repairs" but "FCA has failed to repair [] the Uconnect system." (Am. Compl. at PageID 1142).

*Courtney (Illinois)* – In February 2018, Courtney purchased a 2018 Chrysler Pacifica Touring LS "equipped with a Uconnect" from a third-party dealership in Illinois. (Am. Compl. at PageID 1143). Shortly after purchasing his vehicle, Courtney "observed his Uconnect malfunctioning." (Am. Compl. at PageID 1144). Specifically, Courtney alleges the screen would frequently "turn black and reboot" without any input from any passenger in the vehicle. (Am. Compl. at PageID 1144). Further, Courtney alleges that the Uconnect system would "spontaneously start playing movies from the DVD system in the back of the vehicle, which was distracting to [him] when driving and precluded the ability to use the GPS and other controls. (Am. Compl. at PageID 1144). Courtney sought repairs from the third-party dealership from which he purchased the vehicle in November 2018, January 2019, and March 2019. (Am. Compl. at PageID 1144). After those efforts to repair the Uconnect failed, Courtney sought repairs from a different third-party dealership in June 2019 where a software update was performed. (Am. Compl. at PageID 1145). However, the software update "did not cure the Uconnect Defect" in Courtney's vehicle. (Am. Compl. at PageID 1145).

*Gerritsen and Elice (California)* – In March 2018, Gerritsen and Elice purchased a 2018 Chrysler Pacifica "equipped with Uconnect" from a third-party dealership. (Am. Compl. at PageID 1146). They do not specify specifically what was wrong with the vehicle, but they took the vehicle "back to the dealership multiple times seeking warranty repair of their defective Uconnect system." (Am. Compl. at PageID 1147). In September 2018, at the dealership, Gerritsen and Elice complained that the rear screens were inoperable. (Am. Compl. at PageID 1147). The dealership did a reboot and returned the vehicle. (Am. Compl. at PageID 1147). However, the vehicle's "Uconnect Defect would continue to manifest." (Am. Compl. at PageID 1147). In January 2019, they returned to the dealership reporting intermittent problems with the rear view camera and the tv monitors. (Am. Compl. at PageID 1147). The dealership performed another software update. (Am. Compl. at PageID 1148). However, the "Uconnect Defect would continue to manifest." (Am. Compl. at PageID 1148). In March 2019, they returned to the dealership complaining of problems with the radio. (Am. Compl. at PageID  1148). The technician at the dealership reported that the radio unit was internally faulty and ordered a replacement unit. (Am. Compl. at PageID 1148). In April 2019, Gerritsen and Elice returned to the dealership complaining of radio freezes and Bluetooth music pauses. (Am. Compl. at PageID 1148). After the vehicle was returned to Gerritsen and Elice, the "Uconnect Defect would continue to manifest." (Am. Compl. at PageID 1148).

*The Bagleys (California)* – In November 2017, the Bagleys purchased a 2018 Chrysler Pacifica "equipped with Uconnect" from a third-party dealership. (Am. Compl. at PageID 1149). The Bagleys took their vehicle back to the dealership for repairs on their Uconnect system multiple times. (Am. Compl. at PageID 1149). In September 2018, December 2018, and May 2019,  the Bagleys complained that the navigation system "dies intermittently, with the screen going black or bright blue, the system resetting, and the back-up camera going black." (Am. Compl. at PageID

1150). The dealership was unable to duplicate the concern and returned the vehicle. (Am. Compl. at PageID 1150). In February of 2020, the Bagleys returned complaining of the same issue, and on this occasion "dealer personnel informed them that FCA is aware of the issue but that there is no fix available, and that the dealership would inform [them] once the dealership itself knows more." (Am. Compl. at PageID 1151).

*Swindle (California)* – In June 2019, Swindle purchased a certified pre-owed 2017 Chrysler 300S "equipped with Uconnect" from a third-party dealership in California. (Am. Compl. at PageID 1151). Within two weeks of purchasing his vehicle, Swindle "observed his Uconnect malfunctioning." (Am. Compl. at PageID 1153). Specifically, Swindle alleges that the screen in Uconnect device would frequently "turn black and reboot." (Am. Compl. at PageID 1153). Additionally, the backup camera system "regularly fails to produce audible warnings to indicate proximity to other vehicles, people or objects." (Am. Compl. at PageID 1153). Swindle took the vehicle to the dealership for repairs in August 2019 and December 2019, but the dealership was unable to duplicate the concerns and returned the vehicle to Swindle. (Am. Compl. at PageID 1153-1154). In April 2020, Swindle took a video of his Uconnect malfunctioning and showed it to a service technician at the dealership but the service technician refused to repair it. (Am. Compl. at PageID 1154).

## STANDARD OF REVIEW

A motion to dismiss tests the legal sufficiency of the plaintiff's complaint. To survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

Although the Court must accept all well-pleaded factual allegations as true for purposes of a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 555. Thus, to avoid dismissal, "a complaint must contain sufficient factual matter," accepted as true, to state a claim for relief that is plausible on its face. *Id.* at 678. In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

"A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts." *Id*.

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

## ANALYSIS

In its motion to dismiss, FCA argues that the Amended Complaint should be dismissed in its entirety. (Def's Br., at PageID 1491). FCA's brief addresses each of the forty-one claims and

why they argue Plaintiffs have failed to state a claim for each. The Court shall address each argument.

## I. Claims for the Nationwide Class (Counts 1, 2, 3, 4)

As an initial matter, FCA argues that the claims brought on behalf of the Nationwide Class should be dismissed because the Plaintiffs do not allege injuries in states other than where they reside and purchased their vehicles and they do not plead claims under the laws of all fifty states. (ECF No. 54, at PageID 1505).

Although "class-certification analysis may precede standing analysis when the class certification issue [is] logically antecedent to the standing issue." *McKee v. Gen. Motors LLC*, 376 F. Supp.3d 751, 755 (E.D. Mich. 2019) (citations removed). "This 'logically antecedent' language should be construed in a manner that permits consideration of the standing issue prior to class certification." *Flores v. FCA US LLC*, 2021 WL 1122216, **25-26 (E.D. Mich. 2021). As this Court explained in *Flores*, "[n]amed plaintiffs 'who represent a class must allege and show that they personally have been injured not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Id.*, (quoting *In re Packaged Ice Antitrust Litig.*, 779 F.Supp.2d 642, 657 (E.D. Mich. 2011)).

Plaintiffs seek to represent a nationwide class but only present factual allegations on behalf of named Plaintiffs in only seven states. (ECF No. 49, at PageID 1128-1155). The named Plaintiffs here do not allege injuries in states other than their own or base their claims on the application of other states' laws. (ECF No. 49, at PageID 1128-1155); *see Wozniak v. Ford Motor Company*, 2019 WL 108845 *1, No. 2:17-cv-12794 (E.D. Mich. Jan. 4, 2019) (determining that the named plaintiffs failed to allege injury in twenty-three states and dismissing the claims for lack of standing).

Plaintiffs therefore lack standing to bring claims on behalf of a nationwide class, and the Court GRANTS FCA's motion as to the claims brought on behalf of the nationwide class and DISMISSES Counts 1, 2, 3, and 4.

## II. Warranty Claims (Counts 5, 6, 11, 12, 18, 19, 24, 25, 30, 31, 36, 37)

FCA argues that both the express warranty claims and implied warranty claims should be dismissed.

### A. Express Warranty Claims (Counts 5, 11, 18, 24, 20, 36)

FCA acknowledges that Plaintiffs were provided with a written, express warranty. (ECF No. 54-2). The Basic Limited Warranty provided to Plaintiffs states: "The warranties contained in this booklet are the only express warranties that FCA US LLC ("FCA US") makes for your vehicle." (ECF No. 54-2 at PageID 1532). "The Basic Limited Warranty covers the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation." (ECF No. 54-2 at PageID 1535). The Basic Limited Warranty begins on the date when the owner takes delivery of the vehicle or when the vehicle is first put into service, whichever is earlier. (ECF No. 54-2 at PageID 1534).

FCA argues that the express warranty claims should be dismissed for several reasons.

#### 1. Express Warranty Coverage of Design Defects

FCA's first argument is that the express warranty claims should be dismissed because the Basic Limited Warranty does not cover design defects. (Def's Br. at PageID 1505). This Court addressed this argument in *Flores v. FCA US LLC*, Case No. 20-10972, 2021 WL 1122216 at *7-9 (E.D. Mich. Mar. 24, 2021). Here, the warranty language is the same as it was in *Flores*. In *Flores*, the Court concluded that the warranty language that covers defects in "material, workmanship or factory preparation" did not cover design defects. *Id. See also Matanky v. Gen.*

*Motors LLC*, 370 F.Supp.3d 772 (E.D. Mich. 2019). Therefore, the issue is whether Plaintiffs have

alleged a design defect, a manufacturing defect, or both.

In *McKee v. Gen. Motors LLC,* 376 F. Supp.3d 751 (E.D. Mich. 2019)*,* the district court

explained that there are two types of defects:

> There are two types of defects: manufacturing and design. A manufacturing defect exists "when an item is produced in a substandard condition" and the defect manifests when the item "perform[s] differently from other ostensibly identical units of the same product line." *Davidson v. Apple, Inc*., No. 16-CV-04942-LHK, 2017 WL 976048, at *11 (N.D. Cal. Mar. 14, 2017) (quoting *McCabe v. Am. Honda Motor Co.*, 100 Cal. App. 4th 1111, 1120, 123 Cal.Rptr.2d 303 (2002)); *see also Nelson v. Nissan N. Am., Inc*., No. 11-5712 (JEI/AMD), 2014 WL 7331075, at *2 (D.N.J. Dec. 19, 2014) (A manufacturing defect occurs "when a product comes off the assembly line in a substandard condition."). Thus, manufacturing defects can be understood as "defects in 'material or workmanship.' " ECF 23, PgID 403.
> A design defect "exists when the product is built in accordance with its intended specifications, but the design itself is inherently defective." *Davidson,* 2017 WL 976048, at *11 (quoting *McCabe,* 100 Cal. App. 4th at 1120, 123 Cal.Rptr.2d 303). Design defects, therefore, exist in every product possessing the faulty design.

*McKee*, 376 F.Supp.3d at 756.

FCA analogizes the pleadings in *Flores* to the Amended Complaint and argues that the

Court should similarly find that Plaintiffs have not alleged a manufacturing defect. (Def's Reply

at PageID 2271-2272). However, in *Flores*, the plaintiffs' allegations focused far more heavily on

the design defect: "The design of the electronic sway bar disconnect is stunningly bad"; "The

design . . . is so obviously ill-conceived…" *Flores*, 2021 WL 1122216 at *6.

Here, Plaintiffs have alleged: "the Uconnect system is designed and/or manufactured

[defectively]" (Am. Compl. at PageID 1124); "the Class Vehicles suffered from an inherent defect,

were defectively manufactured or designed or contained defective materials, and were not suitable

for their intended use" (Am. Compl. at PageID 1245); and "FCA sold and/or leased the Class

Vehicles knowingly concealing that they contained the design, manufacturing materials and/or

workmanship defects." (Am. Compl. at PageID 1288). These allegations are far more similar to those in *Milistis v. FCA US LLC* and *Francis v. Gen. Motors, LLC*, in which the district courts held that the plaintiffs plausibly alleged *either* a design defect *or* a manufacturing defect. *Milistis*, Case No. 20-cv-11578, 2021 WL 3145704 at *4 (E.D. Mich, July 26, 2021); *Francis*, 504 F.Supp.3d 659, 673 (2020). At the motion to dismiss stage, "courts have rejected efforts to create an artificial distinction between design and materials/workmanship defects." *Persad v. Ford Motor Co.*, 2018 WL 3428690, at *5 (E.D. Mich. July 16, 2018). Because the facts alleged here could be consistent with a defect in manufacturing or materials, "Plaintiffs are not required to commit to a single theory of the origin of the [Uconnect Defect] at this [early stage]." *Gregorio v. Ford Motor Co.*, 522 F.Supp.3d 264, 288 (2021). Therefore, FCA's first argument as to the express warranty claims is not persuasive.

### 2. Sufficiency of Factual Allegations

Second, FCA argues that "Plaintiffs' express warranty claims are subject to dismissal because the [Amended Complaint] is devoid of ***facts*** supporting any breach." (Def's Br. at PageID 1507). Specifically, FCA argues that the express warranty did not promise a defect-free vehicle, but rather that FCA would provide a free repair of certain components if they were found to be "defective in material, workmanship or factory preparation." (Def's Br. at PageID 1507). FCA argues that "there is ***no*** allegation FCA US ***ever*** refused to provide any requested service, or that Plaintiffs were ever charged with anything for repair." (Def's Br. at PageID 1507). This argument is not taken well.

Plaintiffs have plausibly alleged that FCA breached the express warranty by not sufficiently repairing the Uconnect systems in the Class Vehicles. The Amended Complaint alleges that each of the named Plaintiffs took their Class Vehicles to FCA and the service technicians

15

either could not replicate the concern so they did nothing or they performed a repair that did not correct the problems with the Uconnect system. (Am. Compl. 1129-1154). At the motion to dismiss stage, Plaintiffs have plausibly alleged that FCA has breached the express warranty. Therefore, FCA's second argument as to the express warranty claims is not persuasive.

The Court DENIES FCA's motion to dismiss as to the express warranty claims (Counts 5, 11, 18, 24, 20, 36).

**B. Implied Warranty Claims (Counts 6, 12, 19, 25, 31, 37)**

FCA argues that "Plaintiffs' claims for breach of implied warranty fail because the facts pleaded do not support the notion their vehicles were 'unmerchantable'" because there are not any allegations that the Class Vehicles could not be driven or that Plaintiffs stopped driving the Class Vehicles. (Def's Br. at PageID 1508-1510). However, the Court does not find this argument persuasive because:

> for an automobile to be merchantable in the usual sense, the law requires more than that it simply move from point to point under its own power. Ordinary car buyers reasonably expect, and the law allows that they should expect, cars not only to "provide transportation," but also do so in a reasonably safe and reliable manner.

*Francis*, 504 F.Supp.3d at 675.

"Federal courts considering implied warranty claims in auto defect litigation consistently have held that an automobile is merchantable or fit for its intended purpose only where it is able reliably to operate in a 'safe condition' or to provide 'safe transportation.'" *Id*. at 676 (quoting *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 334 F.R.D. 96, 112 (E.D. Mich. 2019). Here, the Plaintiffs allege that:

> [T]he Uconnect Defect can result in a loss of backup camera, loss of navigation, black screens, and inadvertent reboots among other failure modes. The failure of the backup camera and navigation system puts lives at risk. A faulty backup camera leaves drivers unable to see small children or wheelchair-using adults behind their vehicles. A malfunctioning navigation system requires drivers to rely on their

> phones for navigation, which increases distraction and the risk of accident may violate handsfree laws.

(Am. Compl. at PageID 1127). As pled, the defect plausibly renders the Class Vehicles unsafe, unfit for their ordinary purpose, and below average expectations and quality.

Therefore, the Court DENIES FCA's motion to dismiss as to the implied warranty claims (Counts 6, 12, 19, 25, 31, 37).

### C. State-Specific Claims

#### 1. Pre-suit Notice Under Florida Law (Counts 18 & 19)

"To recover on a breach-of-warranty claim under Florida law, the 'buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.'" *In re FCA US LLC Monostable Elec. Gearshift Litig.,* 334 F.R.D. at 225 (quoting Fla. Stat. § 672.607(3)(a)). Recently, a court in this district has held that manufacturers are included in the definition of a "seller" who must be notified before a plaintiff brings a breach-of-warranty claim under Florida law. *Id*. This well-reasoned opinion is persuasive. Here, Pistorio has not alleged that he has provided pre-suit notice to FCA, and therefore he has not met the requirements under Florida law to bring breach-of-warranty claims.

The Court GRANTS FCA's motion as to the breach of warranty claims under Florida law and DISMISSES Counts 18 & 19.

#### 2. Privity for Implied Warranty Claims under Alabama, Florida, and Illinois Law (Counts 5, 18, 24)

As Count 18 has already been dismissed for lack of pre-suit notice under Florida law, this memo shall only address Counts 5 (implied warranty under Alabama law) and 24 (implied warranty under Illinois law).

17

Regarding Count 5, this Court has recently held that an absence of privity "is an insurmountable bar to implied warranty claims" in Alabama. *Gant v. Ford Motor Co.*, 517 F.Supp.3d 707, 717 (E.D. Mich. 2021). *See also Weidman v. Ford Motor Co.*, No 18-12719, 2019 WL 3003693, at *3 (E.D. Mich. July 10, 2019) ("Plaintiffs Weidman [Alabama], Burton and Naasz allege that they purchased their trucks from independent Ford dealers, thus these Plaintiffs are not in privity with Ford and their implied warranty claims must fail.") (citing *Rampey v. Novartis Consumer Health, Inc.*, 867 So.2d 1079, 1087 (Ala. 2003)). Plaintiffs argue that "Alabama recognizes the 'third-party beneficiary' exception to vertical privity." (Pl's Br. at PageID 1809). However, this argument is not persuasive because Plaintiffs cite out-of-date caselaw that is contradicted by more recent cases such as *Gant* and *Weidman*. As Przekop alleges he purchased his vehicles from an independent FCA dealership (Am. Compl. at PageID 1135), his implied warranty claim under Alabama law (Count 5) must be dismissed.

Regarding Count 24, this Court has recently held that in Illinois, "a plaintiff must allege facts – not conclusory allegations – that the dealership where he purchased the car was an agent of company and under its control." *Gant*, 517 F.Supp.3d at 717 (citing *Matanky*, 370 F.Supp.3d at 786-787). Here, Courtney alleges that the dealership from which he purchased his vehicle was "an authorized FCA Dealer in Sycamore, Illinois." (Am. Compl. at PageID 1143). Therefore, the breach of implied warranty claim under Illinois law (Count 24) must be dismissed.

The Court GRANTS FCA's motion as to the breach of implied warranty claims under Alabama and Illinois law and DISMISSES Counts 5 and 24.

**III. Fraud-Based Claims (Counts 2, 3, 7, 8, 9, 13, 14, 15, 16, 20, 21, 22, 26, 27, 28, 32, 33, 34, 38, 39, 40)**

FCA argues that Plaintiffs' fraud-based claims should be dismissed for numerous reasons. The Court shall address each.

## A. Misrepresentation Claims

FCA argues that "Plaintiffs have failed to plead any actionable representations, and they do not meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which is applicable to all of their fraud-based claims." (Def's Br. at PageID 1512).

This Rule requires a party plead "with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). The Sixth Circuit reads Rule 9(b) liberally, requiring a plaintiff, at a minimum, to "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent; and the injury resulting from the fraud." *See Coffey v. Foamex L.P.,* 2 F.3d 157, 161–62 (6th Cir.1993).

Here, Plaintiffs do not argue that they have made sufficient allegations for a misrepresentation claim. (Pl's Br. at PageID 1812-1813). Instead, Plaintiffs argue that they have met the standard for a fraudulent omission claim.

## B. Omission-Based Claims

"The specificity required for allegations of affirmative misrepresentations is necessarily different than the specificity required for allegations of fraudulent omissions." *Gamboa v. Ford Motor Co.*, 381 F.Supp.3d 853, 872-873 (E.D. Mich. 2019) (citing *In re Duramax Diesel Litig.*, 298 F.Supp.3d 1037, 1055 (E.D. Mich. 2018)). "When it comes to claims of fraud by omission or fraudulent concealment, the plaintiff faces a slightly more relaxed pleading burden; the claim can succeed without the same level of specificity required by a normal fraud claim." *Beck v. FCA US LLC*, 273 F.Supp.3d 735,751 (E.D. Mich. 2017). However, even for a fraudulent omission claim,

19

"Rule 9(b) requires a plaintiff to set forth the 'who, what, when, where, and how' of the alleged omission." *Gamboa*, 381 F.Supp.3d at 873 (citing *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012)). To survive a motion to dismiss on a fraudulent omission claim, "Plaintiffs must set forth: (1) precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what defendant obtained as a consequence of the alleged fraud." *Id*. "A complaint may suffice under the applicable standard if it alleges that a manufacturer knew of a defect before sale, the various venues the manufacturer used to sell the product failed to disclose the defect, and that the plaintiffs would not have purchased the product or would have paid less for it had they known of the defect." *Wozniak*, 2019 WL 108845 at *3.

Here, regarding what was omitted, Plaintiffs have alleged "FCA's failure to disclose, at the time of purchase, the Uconnect's marked tendency to fail." (Am. Compl. at PageID 1128). Plaintiffs allege who should have made the representation: FCA. (Am. Compl. at PageID 1128). As to how the omission was misleading, Plaintiffs allege that the omission "is material because no reasonable consumer expects to spend hundreds, if not thousands, of dollars to repair or replace the Uconnect Defects in their vehicles." (Am. Compl. at PageID 1128). Plaintiffs allege that FCA profited from the omission because "Plaintiffs and Class Members would not have purchased the Class Vehicles or would have paid less for them." (Am. Compl. at PageID 1128).

FCA argues that Plaintiffs have failed to allege the necessary pre-sale knowledge of the defect to sustain the fraud claims. (Def's Br. at PageID 1531). However, this argument is not well taken.

Plaintiffs have alleged that FCA knew about that the Uconnect Defect. Plaintiffs allege that FCA knew about the problems with Uconnect from (1) technical service bulletins (TSBs), (2)

manufacturer communications, (3) recalls by FCA for the Uconnect system, (4) complaints made to third parties, such as the National Highway Traffic Safety Administration ("NHTSA"), (5) pre-release testing data, (6) early customer complaints to FCA and its dealers and the testing done by FCA in response to said complaints, (7) high failure rates of the Uconnect, (8) data demonstrating the inordinately high volume of replacement part sales and other data from FCA dealers about the problem. (Am. Compl. at PageID 1169 - 1180).

Courts in this district have analyzed what is necessary for a plaintiff to have alleged presale knowledge of an auto defect many times. See *Flores*, 2021 WL 1122216 at *20-21; *Francis*, 504 F. Supp.3d at 682; *Gant*, 517 F.Supp.3d at 721-723; *Milisits*, 2021 WL 3145704 at *4; *Wozniak*, 2019 WL 108845 at *3. Upon the Court's review of these cases, it appears that Plaintiffs allegations are most similar to those in *Francis*, in which the court held that the plaintiffs' met the pleading standard with specific allegations that the defendant knew about the defect from:

> (1) experience with a materially similar predecessor transmission design in the 6L50 model, (2) results of internal pre-production testing on the new models, (3) complaints by test drivers and early buyers when the cars first went to market, and (4) complaints submitted through the defendant's dealer network and via public authorities such as NHTSA.

*Francis*, 504 F. Supp.3d at 682. The *Francis* court went on to describe the significance of the defendant's issuance of more than 60 TSBs addressing the same symptoms of the defect at issue in that case and "thus adequately alleging that [defendant] was aware of and attempting to cope with the same defect the plaintiffs have described." *Id*.

Here, at least 13 TSBs were issued by FCA from 2016 to 2019 advising dealers of potential customer complaints and promoting an (allegedly defective) software update to address the problems. (Am. Compl. at PageID 1169-1174). These TSBs consistently describe the symptoms of the defect in similar terms to the accounts in the Amended Complaint, including: "touchscreen

freezing up or becomes inoperative", "rear view camera does not display on screen", "backup camera screen blank" , and "radio control screen blank or locked." (Am. Compl. at PageID 1169 -1174). Therefore, Plaintiffs have adequately alleged that FCA was aware of and attempting to cope with the same defect that the plaintiffs have described.

### C. Economic Loss Rule (Counts 9, 13, 16, 20, 22, 39, 40)

FCA argues that the fraud claims are barred by the "economic loss rule" adopted in some jurisdictions, "which bars plaintiffs from recovering in tort for losses consisting of merely of an impairment of the benefit in a contractual bargain with the defendant (i.e., having overpaid for a substandard product)." *Francis*, 504 F.Supp.3d at 686. FCA argues that this doctrine "mandates the dismissal of Plaintiffs' claims for fraudulent concealment under California, Florida, and Pennsylvania law (Counts 13, 20, and 38), their negligent misrepresentation claims under Alabama, California, Florida, and Pennsylvania law (Counts 9, 16, 22, and 40) and their PUTPCPL claim (Count 39)." (Def's Br. at PageID 1517).

However, "federal courts have recognized that significant public policy concerns weigh heavily against the overextension of this limiting doctrine." *Francis*, 504 F.Supp.3d at 686 (citing *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F.Supp.3d 372, 435-436 (S.D.N.Y. 2017). In Florida, "the economic loss rule will not bar claims of fraudulent inducement such as are asserted here, where the defendant allegedly concealed facts to encourage a plaintiff to buy its product." *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 446 F.Supp.3d at 224 (citing *Prewitt Enterprises, LLC v. Tommy Constantine Racing, LLC*, 185 So.3d 566 (Dist. Ct. App. 2016). In Pennsylvania, the economic loss doctrine does not apply "to fraud based claims where a plaintiff alleges fraudulent inducement or that the defendant violated an extrinsic duty." *Francis*, 504 F.Supp.3d at 687 (quoting *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160,

at *18 (D.N.J. May 8, 2017)). In California, "the economic loss rule doesn't bar a tort claim where alleged fraudulent misrepresentations induce the asserting party to either enter into the agreement or not terminate it." *Juice Roll-Upz, Inc. v. Liquid Guys Distributions, Inc.*, 2018 WL 6118606 at *4 (C.D. Cal. Aug 2, 2018) (citing *Sherwin-Williams Co. v. JB Collision Services, Inc.*, 186 F.Supp.3d 1087, 1095 (S.D. Cal. 2016)).

That only leaves Plaintiffs' Alabama claims. Plaintiffs cite to *Tuscumbia City Sch. Sys. v. Pharmacia Corp.*, 871 F.Supp.2d 1241, 1253 (N.D.Ala. 2012) to support their assertion that Alabama has a "a safety hazard" exemption from the economic loss rule. However, this case is not applicable here. In *Tuscumbia*, the Alabama court reasoned that the economic loss doctrine did not apply because "[t]he economic loss damages claimed by the Tuscumbia City School System are *not a consequence of a 'defect'* in the product that renders it unusable. Rather, plaintiff alleges that the inherently hazardous nature of the products necessitates their removal from its school buildings." *Id*. (emphasis added). This is not analogous to this case. Plaintiffs fail to direct the court to any authority to show that there is relevant exception to the economic loss doctrine under Alabama law. At the hearing, the Court asked Plaintiffs' counsel whether they had any authority to show that Count 9 should not be dismissed under the economic loss doctrine, and Plaintiffs' counsel responded that they relied on *Tuscumbia*. However, the Court does not find that *Tuscumbia* applies here because the economic losses claimed by Plaintiffs are the consequences of the Uconnect defect.

Therefore, the Court GRANTS FCA's motion as to Plaintiff's negligent misrepresentation claim under Alabama law and DISMISSES Count 9. However, the Court DENIES FCA's motion as to Counts 13, 16, 20, 22, 39, 40.

**D. Duplicative Statutory Claims (Counts 8, 14, 15, 21, 27, 33, 39)**

FCA argues that the statutory consumer protection claims should be dismissed because they are based "in part" on FCA's breach of written warranty (Def's Br. at PageID 1518). However, Plaintiffs respond that their consumer protection claims are "primarily based on FCA's fraudulent omissions and not its breach of warranty." (Pl's Br. at PageID 1821). This is reflected in the allegations under those counts in the Amended Complaint.

The Court declines to adopt FCA's argument here, and DENIES FCA's motion as to Counts 8, 14, 15, 21, 27, 33, 39.

### E. Duty to Disclose Under California Law (Counts 13, 14, 15, 16)

FCA argues that the California fraudulent concealment claim (Count 13), the California statutory claims (Count 14, 15), and the California negligent misrepresentation claim (Count 16) should be dismissed for failure to establish a duty to disclose. (Def's Br. at PageID 1519).

For an omission to be actionable under the California Consumers Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*) ("CLRA") or the California Unfair Competition Act (Cal. Bus. & Prof. Code § 17200, *et seq.*) ("UCL"), "the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co.*, 144 Cal.App.4th 824, 835 (2006), *as modified* (Nov. 8, 2006). Under California law, a defendant has a duty to disclose an alleged defect under four circumstances: (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals material facts from the plaintiff; or (4) the defendant makes partial representations but also omits some material facts. *Heliotis v. Schuman*, 181 Cal.App.3d 646, 651 (1986); *LiMandri v. Judkins*, 52 Cal.App.4th 326, 336 (1997). Plaintiffs assert that FCA had a duty to disclose based on exclusive knowledge and based on its active concealment of material fact. (Pl's Br. at PageID 1821).

24

'[A] fact is deemed 'material,' and obligates an exclusively knowledgeable defendant to disclose it, if a 'reasonable [consumer]' would deem it important in determining how to act in the transaction at issue.'" *Elias v. Hewlett–Packard* Co., No. 12–CV–00421–LHK, 2013 WL 3187319 at *11 (N.D.Cal. Jun.21, 2013) (quoting *Collins v. eMachines,* Inc., 202 Cal.App.4th 249, 256, 134 Cal.Rptr.3d 588 (2011)). Nondisclosures about safety considerations of consumer products are material. *Falk v. General Motors Corp.,* 496 F.Supp.2d 1088, 1096 (N.D.Cal.2007).

FCA argues that Plaintiffs claims should be dismissed because they do not allege an "unreasonable safety hazard." (Def's Br. at PageID 1519). However, this argument fails because Plaintiffs have alleged a safety hazard (Am. Compl. at PageID 1127) and "a manufacturer has a duty to disclose any defects that fall within the warranty period, whether relating to safety or costly repairs, that would have caused the consumer to not purchase the car if they had been disclosed." *Apodaca v. Whirlpool Corp.*, 2013 WL 6477821 at *7 (C.D. Cal. Nov. 8, 2013) (quoting *Decker v. Mazda Motor of America, Inc.*, 2011 WL 51017-5 at *4 (C.D. Cal. Oct. 24, 2011)). Here, Plaintiffs have alleged a safety defect within the warranty period.

### F. Unfair or Unlawful UCL Claim (Count 15)

The UCL prohibits unlawful, or unfair, or fraudulent business acts or practices. *State Farm Fire & Casualty v. Superior Court*, 45 Cal. App. 4th 1093, 1102 (1996).

First, this memo has already established that Plaintiffs have sufficiently pled their fraudulent business acts claims. Second, FCA argues that the unlawful and unfair prongs fails because none of Plaintiffs' predicate claims are adequately pled. As stated above, the CLRA claim is adequately pled, so the unlawful claim under the UCL survives. And, "[b]ecause the allegations are sufficient to state a UCL claim based upon deception, the same allegations necessarily suffice

to state a claim under the unfairness prong of the UCL. A practice which is deceptive is necessarily unfair." *Blakemore v. Superior Court*, 129 Cal. App. 4th 36, 49 (2005).

### G. Auto Sales Exemption Under the MCPA (Count 33)

FCA argues that Plaintiffs' claim under the Michigan Consumer Protection Act ("MCPA") should be dismissed because automobile advertisement and sales are statutorily exempt from the MCPA. (Def's Br. at PageID 1522).

The MCPA does not apply to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." M.C.L. § 445.904(1). The Michigan Supreme Court construes this exemption broadly, finding that "the relevant inquiry is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Liss v. Lewiston-Richards, Inc.*, 478 Mich. 203, 210 (2007) (citation and internal quotation marks omitted).

Courts in this District have repeatedly held that "the general transaction in this case (i.e., the sale of a new car by a licensed dealer) is one specifically authorized and regulated by law; thus, it is exempt from the MCPA." *Matanky*, 370 F. Supp. 3d at 799-800 (citing *Jimenez v. Ford Motor Credit Co.*, 2015 WL 9318913, at *7 (Mich. Ct. App. Dec. 22, 2015) (finding that the sale of a motor vehicle by a licensed dealer was an exempt transaction under the MCPA because it was "specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States"). *See also Rosenbaum v. Toyota Motor Sales, USA, Inc.*, 2016 WL 9775018, at *3 (E.D. Mich. Oct. 21, 2016) (dismissing MCPA claim upon finding that Toyota's alleged deceptive advertising conduct was exempt from the MCPA because

Michigan "regulates how car wholesalers like Toyota advertise automobiles" and "regulates the content of general automobile advertisements").

Therefore, the Court GRANTS FCA's motion as to the MCPA claim and DISMISSES Count 33.

In sum on the fraud claims, the Court DENIES FCA's motion as to Counts 2, 3, 7, 8, 13, 14, 15, 16, 20, 21, 22, 26, 27, 28, 32, 34, 38, 39, and 40. The Court GRANTS FCA's motion as to the negligent misrepresentation claim under Alabama law and the MPCA claim and DISMISSES Counts 9 and 33.

**IV. Unjust Enrichment Claims (Counts 10, 17, 23, 29, 35, 41)**

First, FCA argues that Plaintiffs cannot proceed on an unjust enrichment theory where they affirmatively plead the existence of an express warranty governing the parties' relationships. (Def's Br. at PageID 1522).

When an express warranty covers the matter at issue, an unjust enrichment claim is not cognizable. *See Matanky*, 370 F.Supp. 3d at 803.

"Alternatively pleading an express contract and implied contract (whether styled as unjust enrichment or *quantum meruit*) is allowed when, for instance, there is a dispute between the parties as to whether an express agreement exists." *Llwellyn-Jones v. Metro Property Group, LLC*, 22 F. Supp. 3d 760, 793 (E.D. Mich. 2014) (citing *Cascade Elec. Co. v. Rice*, 70 Mich. App. 420, 426-27 (1976)). "A party is not required to elect to proceed under one theory or the other, but could seek recovery on the basis either of an express contract, or an implied contract if the trier of fact found that the express contract did not exist." *Id*. Additionally, "the plaintiff also may bring a breach of contract claim and an unjust enrichment claim in cases where the defendant has 'kept its

options open, and may deny the existence of the contract.'" *Id.* (citing *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*, 96 F.3d 174, 182 (6th Cir. 1996)).

Here, this is not the case. The parties agree that there is an express warranty that governs the dispute: the Basic Limited Warranty. (ECF No. 54-2 at PageID 1532). Therefore, Plaintiff's unjust enrichment claim must be dismissed. "If the parties admit that a contract exists, but dispute its terms or effect, an action will not also lie for *quantum meruit* or implied contract. In other words, alternative pleading of an implied contract claim is only allowed in a contract setting where a party doubts the existence of a contract." *Advanced Plastics Corp. v. White Consol. Indus., Inc.,* 828 F. Supp. 484, 491 (E.D.Mich.1993) (citations omitted). Plaintiffs "can hardly claim that the express warranty does not govern this issue, when [they] explicitly allege[] in the amended complaint that [FCA's] representations regarding the quality of the class vehicles constituted a breach of express warranty." *Rivera v. Ford Motor Company*, Case No. 16-cv-13786, 2017 WL 3485815, *7 (E.D. Mich. Aug. 15, 2017). "Many recent cases in this District confirm that unjust enrichment claims should be dismissed against auto manufacturers when a valid express warranty exists." *Gant*, 517 F.Supp.3d at 723 (citing *McKee*, 376 F.Supp.3d at 762; *Hall v. Gen. Motors, LLC*, No. 19-10186, 2020 WL 1285636, at *9 (E.D. Mich. Mar. 18, 2020), *appeal dismissed*, No. 20-1321, 2020 WL 6140402 (6th Cir. Sept. 28, 2020); *Miller v. Gen. Motors LLC*, No. 17-14032, 2018 WL 2740240, at *15 (E.D. Mich. June 7, 2018), *appeal dismissed per stipulation*, No. 20-1321, 2020 WL 6140402 (6th Cir. Sept. 28, 2020)).

Therefore, the Court GRANTS FCA's motion as to the unjust enrichment claims and DISMISSES Counts 10, 17, 23, 29, 35, 41.

## CONCLUSION

For the reasons explained above, the Court DENIES in part and GRANTS in part FCA's motion. Specifically, the Court:

- GRANTS FCA's motion as to the claims on behalf of a nationwide class and DISMISSES Counts 1, 2, 3, and 4;

- GRANTS FCA's motion as to the breach of warranty claims under Florida law and DISMISSES Counts 18 and 19;

- GRANTS FCA's motion as to the breach of implied warranty claims under Alabama and Illinois law and DISMISSES Counts 5 and 24;

- GRANTS FCA's motion as to the negligent misrepresentation claim under Alabama law and DISMISSES Count 9;

- GRANTS FCA's motion as to the MCPA claim and DISMISSES Count 33;

- GRANTS FCA's motion as to the unjust enrichment claims and DISMISSES Counts 4, 10, 17, 23, 29, 35, and 41; and

- DENIES the remainder of FCA's motion. Counts 6, 7, 8, 11, 12, 13, 14, 15, 16, 20, 21, 22, 25, 26, 27, 28, 30, 31, 32, 34, 36, 37, 38, 39, and 40 remain.

**IT IS SO ORDERED**.

Dated:  January 14, 2022                              s/Sean F. Cox                          
                                                      Sean F. Cox
                                                      U. S. District Judge

29